IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**KEITH MARTIN MOLINEAUX**,

          **Petitioner,**

**v.**                                               **Case No. 2:21-cv-00190**

**DONNIE AMES,**

          **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court are Petitioner Keith Martin Molineaux's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and his Amended Petition, (ECF Nos. 1, 21); Molineaux's Motions to Dismiss Respondent's Motion and for Summary Judgment (ECF Nos. 44, 48); and Respondent's Motions for Summary Judgment. (ECF No. 26, 35). This case is assigned to the Honorable Irene C. Berger, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Preliminarily, the undersigned notes that Respondent has made a Motion to Strike Molineaux's Motion for Summary Judgment on the basis that the motion is impertinent, scandalous, redundant, and immaterial. (ECF No. 50). Respondent's Motion to Strike is **DENIED** given the liberal construction afforded to the filings of *pro se* parties and the importance of this proceeding to Molineaux. Accordingly, the

1

undersigned has considered the arguments asserted in Molineaux's Motion for Summary Judgment. After thorough consideration of the record, the undersigned conclusively **FINDS** that (1) there are no genuine issues of material fact and (2) Molineaux is not entitled to the relief requested. Therefore, for the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's Motions for Summary Judgment, (ECF Nos. 26, 35); **DENY** Molineaux's Petition for a Writ of Habeas Corpus, his Amended Petition, Motion to Dismiss Respondent's Motion, and Motion for Summary Judgment, (ECF Nos. 1, 21, 44, 48); and **DISMISS** and **REMOVE** this case from the docket of the court.

## I.    Relevant Facts and Procedural History

### A.  Jury Trial, Conviction, Sentencing, Direct Appeal

This case arises from Molineaux's criminal prosecution and conviction for the April 9, 2001 murders of John and Kimmie Stepp, a married couple shot to death in their Skygusty, West Virginia home. (ECF No. 26-36). On October 23, 2001, Molineaux was indicted by a grand jury in the Circuit Court of McDowell County ("circuit court") on seven counts: (1) first degree murder of John Stepp; (2) first degree murder of Kimmie Stepp; (3) robbery; (4) burglary; (5) conspiracy to commit murder; (6) conspiracy to commit robbery; and (7) conspiracy to commit burglary. (ECF No. 26-2 at 1–3). After a four-day jury trial, Molineaux was convicted of all counts except Count Five, conspiracy to commit murder. (ECF Nos. 26-3; 26-4; 26-5; 26-6 at 96–97).

At trial, the State, represented by prosecutor Sidney Bell, called multiple witnesses. The first witness, Michael Bevins, a close neighbor and brother-in-law of the Stepps, testified that on April 9, 2001, he heard two gunshots and saw three men running out of the Stepps' trailer, followed by the Stepps' young daughter, Courtney. (ECF No.

26-3 at 147, 151–53, 155). Bevins testified that Courtney told him that four black men had come into her family's trailer and shot her mom and dad. (ECF No. 26-3 at 156). He went next door and found his in-laws' lifeless bodies and the home's furnishings in disarray. (*Id.* at 157–59). He testified that the three men took off in a car and he observed the direction of the taillights. (*Id.* at 160). On cross examination, one of Molineaux's attorneys, Stephen Paesani ("Paesani"), questioned Bevins about the adequacy of the lighting that night, and Bevins confirmed he could see the shape of the figures running from his in-laws' home and the last person to leave was tall and lanky. (ECF No. 26-3 at 161–62). Paesani questioned whether Bevins's description of the last individual to leave the trailer as tall and lanky was accurate, given that it differed from Bevins's statement to police on the night of the murders indicating that the last individual was short and thin. (*Id.* at 162–64).

The State then called Deputy Sheriff Tim Vineyard ("Deputy Vineyard"), an employee of the McDowell County Sheriff's Department. (*Id.* at 165–66). He recalled arriving on the scene to find the bodies of the Stepps, and also noted the mess in the home such as cabinets and other furniture out of place, "like somebody was looking for something." (*Id.* at 167-69). On cross-examination, Deputy Vineyard testified that John Stepp was known to be a drug dealer and user and that a paper bag of marijuana was found on the couch. (*Id.* at 171–72).

On the second day of trial, the State called James Gianato, an employee of the McDowell County Emergency Communications Center. (ECF No. 26-4 at 2). After testifying to his general work duties, Gianato confirmed that on the night of April 9, 2001, the equipment used to record incoming emergency calls was in good working order, as was the recording equipment used to duplicate for trial the 911 call reporting

the Stepps' murders. (ECF No. 26-4 at 2–5). The 911 call was then played for the jury. (*Id*. at 6).

The State next called James Day ("Day"), a longtime friend and coworker of John Stepp, who remembered stopping by to see the Stepps at around 7 or 7:30 p.m. on the night they were killed and staying about an hour. (*Id*. at 7–10). He testified that he received a visit from James Reginald Jones, II, also known as Jamie Jones ("Jones"), at about 9 or 9:30 p.m. that night. (*Id*. at 12–13). Day recalls Jones placing a telephone call using Day's phone, and heard him ask another individual to come pick him up. Day overheard Jones say something like "you know what we was supposed to do," or something to that effect, at which point Jones left and waited until he was picked up by a white car. (*Id*. at 13–14). The State's next witness was Bonnie Day ("Bonnie"), Day's ex-wife, who provided testimony similar to that of her ex-husband, including about Jones's telephone conversation. She added, however, that she saw Jones being picked up by the same white car on the night before the murders, and she recalled that on April 8, 2001 the car was driven by Thomas King ("King"). (*Id*. at 15–18). On cross examination, Molineaux's other attorney, McGinnis Hatfield ("Hatfield"), asked Bonnie to review the statement she gave to police on the night of the Stepps' deaths and noted that the statement did not reference the contents of Jones's telephone conversation. (*Id*. at 21).

The State called Dennis Johnson ("Johnson") as the next witness. Johnson was the eighteen-year-old son of Day and Bonnie and a longtime acquaintance and coworker of John Stepp, as well as a lifelong friend of Jones. (ECF No. 26-4 at 24–25). He recalled seeing Jones in a white car driven by King, another longtime friend, on the day before the murders. (*Id*. at 26–27). Johnson remembered that after King and Jones left in the

car, Molineaux came down the road in his father's red or reddish truck asking if Johnson had seen Jones and King because the two were in Molineaux's car. (ECF No. 26-4 at 27–28). Paesani objected to part of Johnson's testimony as hearsay on the basis that Johnson did not actually know Molineaux and had been told that was who he was by another person. (*Id.* at 29–31). Johnson remembered Jones asking him where John Stepp lived as he needed to "talk to" him and that the two were friends. (*Id.* at 32–33).

The State's following witness was David Pleasant ("Pleasant"), a friend and coworker of John Stepp. (*Id.* at 33–34). Pleasant testified that John Stepp confided in him that he owed someone in Bluefield $400. (*Id.* at 36). Next, the State Deputy Chief Medical Examiner testified about the injuries the Stepps sustained as well as other health indicators. (ECF No. 26-4 at 38–55). He confirmed that Kimmie Stepp was shot behind her left ear and John Stepp was shot above his left eye in the forehead, and these gunshots caused their deaths. (*Id.* at 44-47). After this testimony, the State called the head of the Latent Print Section of the Forensic Laboratory for the West Virginia State Police, Stephen King, who testified that a gun and dresser drawer submitted for testing yielded no identifiable prints. (*Id.* at 56–66). Next, the State called David Rose ("Rose"), the Stepps' neighbor. (*Id.* at 67–68). He testified that he heard gunshots the night the Stepps were killed, although he did not see anyone leaving the trailer. (*Id.* at 68–70).

The State's then offered King, who had also been charged with the same crimes as Molineaux. (ECF No. 26-4 at 74). King testified that on the day of the shooting, he, along with Molineaux, Jones, and Brandon Britto ("Britto"), went to Skygusty to buy marijuana from John Stepp. (*Id.* at 96–100). While there, John Stepp showed Molineaux the marijuana and Molineaux said it "wasn't no good." (*Id.* at 102). After that, John Stepp said he knew where to get better marijuana, and Molineaux asked him if he

5

had money for better marijuana. (ECF No. 26-4 at 103). King stated that he looked away for a moment, and when he looked back Molineaux had a gun to John Stepp's head. (*Id.*). King testified that Molineaux demanded money and took John Stepp toward the back of the trailer at gunpoint, while Britto took Kimmie Stepp and the child to the back of the trailer. King, Jones, and Britto searched the trailer for money at Molineaux's instruction. (*Id.* at 103–06). After Molineaux repeatedly demanded money, King says he heard a gunshot, along with screaming and crying. He ran out of the trailer back toward the car, and while running, he heard a second gunshot. (*Id.* at 107–08). King got into the automobile, and a few seconds later Britto came. Another five seconds passed before Molineaux and Jones got into the car, and they drove off. According to King, Britto asked Molineaux why he shot the Stepps. Molineaux later stated that he shot John Stepp when he would not tell Molineaux where the money was located and then shortly thereafter shot Kimmie Stepp. (ECF No. 26-4 at 110-112). King testified that Molineaux stated that the gun jammed after he shot Kimmie Stepp and Molineaux decided not to shoot the child. (*Id.* at 112). The following day, King told his uncle what had occurred at the Stepps' residence, and King's uncle suggested that King turn himself in to the police. (*Id.* at 117). King went to the Northfork police station later that day and told the officers everything that had happened. On cross-examination, Molineaux's counsel pressed King to admit that it was Britto, and not Molineaux, who shot the Stepps, but King insisted it was Molineaux. (*Id.* at 144).

The State next called Michael Crowder, a police officer for the West Virginia State Police ("Officer Crowder"). (*Id.* at 161). Officer Crowder testified that he was among a group of officers who executed a warrant for Molineaux's arrest and later interrogated him at the Bluefield Police Department. (*Id.* at 162–65). After ascertaining that

Molineaux had been Mirandized, Officer Crowder stated that he brought Molineaux to an interrogation room and spoke with him for about an hour and a half while taking notes, later making additional notes on a copy of the original notes. (ECF No. 26-4 at 165–69). Molineaux's counsel objected to the admission of the notes. (*Id.* at 170). Officer Crowder read his notes into the record, recounting Molineaux's description of his activities on the day of the shooting. (*Id.* at 171–72). Officer Crowder testified that Molineaux confessed, saying he "had to" and that he "didn't mean to hurt the kid." (*Id.* at 172–73). He recalled Molineaux referencing a threat made against him and the possibility that another person ordered the Stepps' killing. (ECF No. 26-4 at 173–75). Officer Crowder did not remember Molineaux ever asking for a lawyer although he had been advised of his right to have one. (*Id.* at 186). On cross examination, Molineaux's counsel confirmed information about the *Miranda* warnings given to Molineaux and that Molineaux provided no recorded or written statement of his own. (*Id.* at 186–90).

On the following day of trial, the State first called Clarence Lane, a tool and firearms examiner for the West Virginia State Police, who discussed the bullets found in the Stepps and the bullets' consistency with the gun found at Britto's residence. (ECF No. 26-5 at 3–26). Mark Shelton, a deputy sheriff for the McDowell County Sheriff's Department ("Deputy Shelton"), testified after Mr. Lane. (*Id.* at 27). Deputy Shelton provided information about the murder investigation and the recovery of a handgun in the couch cushions at Britto's apartment. (*Id.* at 27–33). The State's next witness was William Jones, an officer for the Bluefield Police Department ("Officer Jones"). (*Id.* at 40–41). Officer Jones testified about the investigation, including drugs and a gun found in Britto's apartment, as well as Molineaux's arrest and refusal to discuss the events with him. (*Id.* at 41– 56). On cross-examination, Molineaux's attorneys confirmed Officer

7

Jones's belief that the money found in Britto's apartment was related to drug trafficking, his understanding that the bullets used to kill the Stepps matched the bullets in Britto's apartment and in the gun, and that Molineaux had been Mirandized upon arrest. (ECF No. 26-5 at 59–68). The State next called George Waldron, a manager of Citizens Communications, a telephone services provider who testified about the call records of Day, confirming that two calls had been made on April 9, 2001 from Day's telephone to the telephone of Harriet Brown. (*Id.* at 71–75).

The State then called Harriet Brown, Molineaux's girlfriend. (*Id.* at 76–77). She testified that she allowed Molineaux to use her white Oldsmobile car at times, and that on the night the Stepps were killed, Molineaux had borrowed the car to take Jones and King home, but then later returned home around midnight with the two and they spent the night at her house. (*Id.* at 78, 82–84). Ms. Brown also testified at length about her telephone records, indicating that both Jones and King called on April 9, 2001 looking for Molineaux so that he could take them somewhere to do something.

Next, the State called John Pauley, an officer with the West Virginia State Police ("Officer Pauley"). (ECF No. 26-5 at 112). Officer Pauley testified about his response to the scene of the Stepps' murders, photographs of the murder scene, and the execution of the warrant at Britto's apartment. (*Id.* at 112–38). He said the Stepps' home appeared to have been "ransacked." (*Id.* at 139). He also testified about the statement made to him by King concerning the events of that night, including King's identification of Molineaux as the shooter, and about Molineaux's arrest and being Mirandized. (*Id.* at 143–61). Officer Pauley confirmed on cross examination that Molineaux was the tallest of the four men who went to the Stepps' house on the night of the murders, and Britto was the shortest. (*Id.* at 168-69). He also acknowledged that the murder weapon and

8

ammunition were found in Britto's possession, but Britto's clothing was not tested for gunshot residue. (ECF No. 26-5 at 170-72). Officer Pauley was asked about statements made by Jones, and he testified that Jones was not particularly bothered by the murders and stated: 'We were drug dealers and they was drug dealers ... those things just happen." (*Id.* at 175-76). Officer Pauley conceded that no drugs, money, or firearm was ever located on Molineaux or at his residence. (*Id.* at 176). After Officer Pauley was excused, the judge thoroughly advised Molineaux of his right to testify as well as his right to remain silent. (*Id.* at 187–88). Molineaux asked to speak with his lawyers and was given time to do so. (*Id.* at 188).

On the final day of the trial, Molineaux was again advised of his right to testify or remain silent and confirmed that he had spent time that morning and the night before discussing the decision with his attorneys. (ECF No. 26-6 at 1-3, 16). He decided not to testify, and the circuit court found that the decision was made "knowingly, voluntarily, and with the advice of competent counsel." (*Id.* at 17). Without calling witnesses, the defense rested its case. (*Id.* at 18).

The State chose to proceed under theories of both felony murder and premeditated murder after the circuit court found there was evidence to support jury instructions on both of those bases. (*Id.* at 20–21). After clarifying the jury instructions with both parties, the judge read the instructions to the jury. (*Id.* at 21–61). The State gave its closing statement, recounting the evidence presented and asking the jury not to recommend mercy. (*Id.* at 61–72). Molineaux's defense counsel gave a closing argument as well, again presenting the theory that Britto, rather than Molineaux, shot the Stepps. (*Id.* at 72–86). In the latter part of the State's closing argument, the prosecutor pointed out that it "doesn't matter if Brandon Britto pulled the trigger or if [Molineaux] pulled

the trigger," as either would render Molineaux guilty of first-degree murder. (ECF No. 26-6 at 87). He also maintained that Officer Crowder was a "good" and "believable" police officer and questioned why defense counsel did not address Officer Crowder's testimony about Molineaux's confession. (*Id.* at 89).

After deliberating, the jury returned the aforementioned verdict: guilty on all counts except Count Five. (*Id.* at 96–97). A sentencing hearing was held on May 16, 2002, and, after denying Molineaux's motion for a new trial, the circuit court sentenced him to two consecutive terms of life imprisonment without mercy for the two counts of murder. (ECF Nos. 26-7, 26-8). He was not sentenced for his convictions on Counts Three and Four because West Virginia law disallows sentencing for an underlying felony when, as in Molineaux's case, the jury indicated he was guilty of murder based on the felony murder rule. (ECF No. 26-7 at 27). He was not sentenced on Counts Six and Seven either, because West Virginia law prohibits prosecution for two or more conspiracies when the conspirators had only one agreement. (*Id.* at 28).

On August 27, 2003, Molineaux, through appellate counsel, appealed to the Supreme Court of Appeals of West Virginia ("SCAWV"). (ECF No. 26-11). He asserted five assignments of error: (1) the circuit court erred by admitting his statements to Officer Crowder when the officer acknowledged Molineaux was not advised of his rights; (2) the circuit court erred by not finding a violation of the "prompt presentment" requirement; (3) the circuit court violated Molineaux's due process rights by allowing the admission of certain evidence; (4) the circuit court erred in admitting Officer Crowder's notes he used to refresh his memory; and (5) the circuit court erred in ruling that counsel was not permitted to attend a "show up" of Molineaux and his codefendants. (*Id.* at 22). On January 27, 2004, the SCAWV refused Molineaux's appeal.

(ECF No. 26-12). Subsequently, Molineaux filed a petition for a writ of certiorari to the Supreme Court of the United States ("Supreme Court"). (ECF No. 26-13). On June 14, 2004, the Supreme Court issued an order denying his petition. (ECF No. 26-14).

### B.   State Habeas Petitions

On September 24, 2004, Molineaux filed his first state habeas petition in the circuit court. *Molineaux v. McBride*, Case No. 04-C-221; (ECF Nos. 26-16, 26-17). He raised twelve grounds for relief with numerous subgrounds. (ECF Nos. 26-16, 26-17). On August 29, 2005, the circuit court summarily dismissed his petition for failure to state a claim. (ECF No. 26-18). On December 28, 2005, Molineaux appealed this dismissal to the SCAWV, arguing that he had raised cognizable claims. (ECF No. 26-19). On July 12, 2006, the SCAWV remanded the matter back to the circuit court to appoint counsel for Molineaux and to hold an evidentiary hearing. (ECF No. 26-20).

On remand, the circuit court appointed habeas counsel, Michael P. Cooke ("first habeas counsel") for Molineaux in an order dated July 26, 2006. (ECF No. 26-21). More than five years later, in an October 24, 2011 order, the circuit court appointed new habeas counsel, Natalie Hager ("second habeas counsel"). (ECF No. 26-22). Relatively shortly thereafter, on February 2, 2012, the circuit court appointed another new habeas counsel, D. Adrian Hoosier ("third habeas counsel"). (ECF No. 26-23). On May 24, 2017, through yet another attorney, Dennie S. Morgan ("fourth habeas counsel"), Molineaux filed an amended habeas petition. (ECF No. 26-24). He asserted nine grounds for relief. (*Id.*). His first ground, claiming that his rights were violated by ineffective assistance of trial and appellate counsel, contained fifteen subgrounds. (*Id.* at 30–65). Through his fourth habeas counsel, Molineaux filed a supplement to his amended petition asserting additional grounds. (ECF No. 26-25). On March 26, 2018 and April 23, 2018, Molineaux

appeared before the circuit court for omnibus evidentiary hearings and called several witnesses, including Molineaux himself, in an attempt to prove his claims. (ECF Nos. 26-28, 26-29, 26-30).

On September 28, 2018, the circuit court denied and dismissed Molineaux's habeas petition in a 31-page order after considering all his claims. (ECF No. 26-35). Molineaux appealed to the SCAWV in Appeal No. 18-0898, raising 27 assignments of error. (ECF No. 26-36 at 2–3). The SCAWV issued a Memorandum Decision on March 16, 2021, affirming the circuit court's denial and dismissal of Molineaux's petition. (*Id.*). The SCAWV determined that the circuit court's decision was "detailed and well-reasoned" and adopted and incorporated its findings and conclusions. (*Id.* at 8).

In addition to his habeas petition filed in the circuit court, Molineaux filed three pro se "original jurisdiction" habeas petitions in the SCAWV. He filed the first of such petitions on March 30, 2012 in Case No. 12-0583, arguing that his rights were violated in his criminal trial due to prosecutorial misconduct and ineffective assistance of counsel. (ECF No. 26-37). On January 9, 2013, the SCAWV refused the petition. (ECF No. 26-40). He filed his second original jurisdiction habeas petition on October 8, 2013 in Case No. 13-1002, again alleging prosecutorial misconduct and ineffective assistance of counsel, and arguing that his rights were violated by procedural irregularities. (ECF Nos. 26-41, 26-43). The SCAWV again refused the petition. (ECF No. 26-45). On July 11, 2014, Molineaux filed his third original jurisdiction habeas petition in Case No. 14-0669. (ECF No. 26-46). He again challenged his conviction based on purported prosecutorial misconduct and ineffective assistance of counsel as well as evidentiary matters and the alleged denial of his right to appeal. (*Id.*). On September 17, 2014, the SCAWV refused his petition. (ECF No. 26-48).

### C.  Federal Habeas Petition

Molineaux filed the instant petition on March 29, 2021. (ECF No. 1).  In his original petition, Molineaux raised nineteen grounds for relief. Grounds One and Two involve allegations of prosecutorial misconduct in evidentiary matters. (ECF No. 1-1 at 1, 21). Grounds Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Fourteen concern ineffective assistance of trial counsel. (ECF Nos. 1-2 at 1, 16, 22; 1-3 at 4, 6, 12, 20, 25, 28, 30; 1-6 at 1). Ground Thirteen asserts that the circuit court judge and prosecution made biased, racist, and prejudicial statements. (ECF No. 1-5 at 1). Ground Seventeen alleges ineffective assistance of appellate counsel. (ECF No. 1-6 at 9). Grounds Fifteen, Sixteen, and Eighteen challenge supposed errors made by the circuit court in jury instructions, failure to dismiss some charges, and "tampering" with case numbers. (ECF No. 1-6 at 7, 8, 11). In Ground Nineteen, Molineaux alleges that the stenographer and prosecutor tampered with the transcripts of his criminal proceedings in violation of his due process rights. (*Id*. at 13).

On August 29, 2021, through counsel, Molineaux filed an amended petition incorporating his original petition. (ECF No. 21). Therein, he reasserts his prior claim that his conviction and sentence violated his rights because it was procured through a fabricated confession, police and prosecutorial misconduct, and a deprivation of his due process rights. (*Id*. at 12). He also contends that his counsel was ineffective in violation of his Sixth Amendment rights, raising five distinct subgrounds in support. (*Id*. at 22, 25, 27, 32, 34).

On October 29, 2021, Respondent filed a motion for summary judgment and a memorandum of law addressing only the grounds raised in Molineaux's amended petition. (ECF No. 26, 27). As to prosecutorial misconduct, Respondent argues that the

circuit court's decision not to grant Molineaux relief based on an allegedly false confession and supposed withholding of exculpatory evidence was not an unreasonable or contrary application of federal law. (ECF No. 27 at 27–29). As to ineffective assistance of counsel, Respondent notes that Molineaux was convicted of felony murder and does not challenge his burglary and robbery convictions; thus, he suffered no prejudice because the identity of the killer is irrelevant in a conviction for felony murder. (*Id.* at 33–34). Nevertheless, Respondent addresses the substance of Molineaux's ineffective assistance claims, arguing that Molineaux has not shown that counsel was constitutionally ineffective and the circuit court was not unreasonable for failing to grant relief. (*Id.* at 34–38).

On January 28, 2022, Respondent filed another motion for summary judgment and memorandum addressing the claims in the original petition. (ECF Nos. 35, 36). Respondent reiterates that Molineaux's statements at the omnibus evidentiary hearing admitting that he was present at the time of the shooting preclude a finding of constitutional prejudice. (ECF No. 36 at 12). Addressing Molineaux's specific claims of ineffective assistance of counsel, Respondent maintains that Molineaux fails to establish that his trial counsel representation was constitutionally deficient. (*Id.* at 14–20). Respondent contends that the indictment in Molineaux's criminal case was sufficient and the SCAWV refused to address the issue because Molineaux had not presented it pretrial. (*Id.* at 20–22). As to the alleged tampering with Molineaux's case numbers and transcripts, Respondent notes that the allegations do not present a constitutional violation. (*Id.* at 23).

On February 17, 2022, Molineaux, acting *pro se*, filed a response to Respondent's motion. (ECF No. 46). In his response, Molineaux largely reiterates his claims

concerning the veracity of the evidence against him and rejects Respondent's contention that the identity of the shooter was irrelevant given that "the prosecutor at [his] trial has presented [its] complete case as [Molineaux] being the shooter." (ECF No. 46 at 43). Molineaux theorizes that, had the jury heard the testimony of the victims' young daughter, he would have been exonerated because she would have identified someone else as her parents' killer. (*Id*.). He also indicates that his counsel "demonstrated a complete [lack] of understanding of felony murder." (*Id*. at 45).

### D.     Molineaux's Motions to Dismiss and for Summary Judgment

On February 17, 2022, Molineaux filed a document entitled "Motion to Dismiss Respondent's Summary Judgement Motion." (ECF No. 44). Therein, he largely repeats the claims in his original petition and asks that the Court grant his motion and allow him "to raise the constitutional violations set forth in his Pro se and Amended Petition." (*Id*. at 7).

On March 17, 2022, Molineaux filed a "Motion for Summary Judgment on Respondents Memorandums." (ECF No. 48). He insists that despite the many reviews of his claims in the state courts through the years, no court has "ruled on the facts and or acknowledge[d] the facts addressed" in his response to Respondent's motion. (*Id*. at 1–2). He expresses his belief that he was convicted and did not obtain habeas relief because of his race and again reiterates some of the claims he made in his prior filings. (*Id*. at 2–7). He requests the appointment of counsel and an evidentiary hearing. (*Id*. at 7). Respondent moved to strike Molineaux's Motion for Summary Judgment

### II.    <u>Standard of Review</u>

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, authorizes a federal

district court to entertain a petition for habeas corpus relief from a prisoner in State custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standard set forth in § 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1). The burden of proof in a habeas action rests with the petitioner. *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002). Accordingly, to succeed on a habeas petition, the petitioner must meet a difficult standard—one "which demands that state-court decisions be given the benefit of the doubt." *Woodford,* 537 U.S. at 24. Thus, when reviewing a petition for habeas relief, the federal court uses a "highly deferential lens." *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 405) (internal quotations omitted). The district court may grant a habeas writ under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id*. at 300–01 (internal marks omitted).

Accordingly, the AEDPA limits the federal habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be unreasonable." *Williams*, 529 U.S. at 365. "A state court's decision is unreasonable where it is 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Here, Respondent and Molineax both move for summary judgment. (ECF Nos. 26, 48). Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). The court will grant

summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller &, Mary Kay Kane, *Federal Practice and Procedure*: *Civil* § 2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition, only genuine disputes over material facts "will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

Motions for summary judgment impose a heavy burden on the moving party, as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990). Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the

light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249–50).

### III.   <u>Discussion</u>

To properly review the decision of a state court in a § 2254 petition, this court must consider the factual determinations and reasoning that are being challenged. The circuit court conducted an omnibus evidentiary hearing over several days and gathered extensive testimony before rendering its lengthy opinion denying Molineaux's habeas claims, an opinion later adopted and incorporated by the SCAWV. Molineaux thus must surmount the extremely high bar of showing that the state court decisions he challenges were unreasonable. *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010) ("Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part."). In the context of a § 2254 petition, a constitutional error will warrant relief only if the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The undersigned notes that some of Molineaux's claims may be unexhausted as he did not raise them on appeal to the SCAWV. In general, the Court may not review a federal habeas petition unless there has been "total exhaustion" of the presenting issues to the state court. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Therefore, when a petitioner has failed to exhaust his state court remedies, a federal habeas petition should be

dismissed. *See Preiser,* 411 U.S. at 477. In the event that a federal habeas petitioner presents a mixed petition consisting of both exhausted and unexhausted claims, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in state court, or (3) allow the petitioner to remove the unexhausted claims and proceed with the exhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). The Court may also deny the unexhausted claims on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Rhines,* 544 U.S. at 277.

Furthermore, while the SCAWV rendered an opinion thoroughly explaining most of the issues Molineaux now raises, for some claims the SCAWV did not provide an independent explanation of its ruling although it adopted and incorporated the circuit court's findings and conclusions. With respect to unexplained state court judgments, federal habeas courts apply the following presumption: where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 797 (1991). If an earlier opinion "fairly appears to rest primarily upon federal law," it should be presumed that no prejudicial default has been invoked by a subsequent order that leaves the judgment or its consequences in place. *Id.* This presumption may be rebutted by strong evidence to the contrary. *Id.* at 798. The "look-through" presumption applies to those claims for which the SCAWV did not render an independent explanation. *See Grueninger v. Director, Virginia Dept. of Corrections*, 813 F.3d 517, 526 (4th Cir. 2016) ("The maxim is that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without

further discussion when they agree, not when they disagree, with the reasons given below.") (applying the look through presumption to a § 2254 petition following an unexplained Supreme Court of Virginia decision); *Woodfolk v. Maynard*, 857 F.3d 531, 545 (4th Cir. 2017); *Nicolas v. Attorney General of Maryland*, 820 F.3d 124, 131 (4th Cir. 2016). As such, the undersigned will assess Molineaux's claims based on the habeas decision and reasoning of the circuit court, as well as the decision of the SCAWV on appeal.

Molineaux raises nineteen grounds in his original petition and two grounds with multiple subgrounds in his amended petition, some of which are redundant. For clarity, the undersigned will group these claims into three broad categories: prosecutorial misconduct, ineffective assistance of counsel, and judicial misconduct and errors.

### A.    Prosecutorial Misconduct

In his pro se Grounds One and Two and the first ground of his amended petition, Molineaux claims that his due process rights were violated because of prosecutorial misconduct—specifically, knowingly relying on false testimony and withholding exculpatory evidence. (ECF Nos. 1-1 at 1, 21; 21 at 12). "When specific guarantees of the Bill of Rights are involved," federal courts must take "special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "By contrast, when such provisions are not at issue, a finding of error as to a prosecutor's remark [or conduct] requires that it 'so infected the trial with unfairness as to make the resulting verdict a denial of due process.'" *United States v. Runyon*, 707 F.3d 475, 507 (4th Cir. 2013) (quoting *DeChristoforo*, 416 U.S. at 643). For example, when a prosecutor offers remarks that touch on a defendant's privilege against self-incrimination, a court must determine

whether those statements "so prejudiced [the] specific right ... as to amount to a denial of that right." *Donnelly*, 416 U.S. at 643. On the other hand, where a prosecutor's comments or conduct do not implicate a particular constitutional right held by the defendant, then the analysis centers on whether the prosecutor's conduct generally violated a defendant's right to due process. *Id.* "[A] court making [this] due process inquiry must consider the challenged conduct in relation to the proceeding as a whole." *Humphries v. Ozmint*, 397 F.3d 206, 218 (4th Cir. 2005). "The analysis of a due process claim premised on unfair prosecutorial conduct ... depend[s] upon numerous factors, which include the nature of the prosecutorial misconduct, the extent of the improper conduct, the issuance of curative instructions from the court, any defense conduct inviting the improper prosecutorial response, and the weight of the evidence." *Id.* (citations omitted). With these standards in mind, the undersigned turns to Molineaux's specific claims of prosecutorial misconduct.

### 1.    *False testimony*

In Ground One, Molineaux claims that Officer Crowder falsely testified that Molineaux confessed to killing the Stepps, and the prosecutor knew that Molineaux had denied any involvement based on Officer Pauley's testimony at the grand jury hearing. (ECF No. 1-1 at 1–12). Respondent contends that Molineaux cannot show that his rights were violated because he "failed to demonstrate that he did not confess" and Officer Crowder testified as to his certainty that Molineaux confessed after hearing and understanding his rights. (ECF No. 27 at 27–28). Thus, Respondent reasons, the state courts' determination that Molineaux "failed to demonstrate that the prosecutor presented false testimony is neither contrary to nor constitutes an unreasonable application of federal law." (*Id.* at 28).

The knowing use of false testimony violates a criminal defendant's right to due process. *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Gaylor v. McBride*, No. CIV.A. 5:02-1206, 2005 WL 2318630, at *14 (S.D.W. Va. Sept. 22, 2005); *United States v. Bagley*, 473 U.S. 667, 679-80 (1985). The SCAWV affirmed the circuit court's denial of Molineaux's habeas petition on this point by relying on a West Virginia case, *State ex rel. Franklin v. McBride*, 226 W. Va. 375 (2009). (ECF No. 26-36 at 8). In *Franklin*, the SCAWV announced its test to determine if a criminal defendant is entitled to a new trial based on the State's presentation of false testimony:

> [I]n order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict.

*Franklin* at 379–80. This test is functionally identical to the test used by federal courts, including the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). *United States v. Basham*, 789 F.3d 358, 376 (4th Cir. 2015) ("On collateral attack, a movant alleging this sort of misconduct must demonstrate three elements: (1) that the testimony at issue was false; (2) that the prosecution knew or should have known of the falsity; and (3) that a reasonable probability exists that the false testimony may have affected the verdict.") (internal citations removed); *see also United States v. Roane*, 378 F.3d 382, 400 (4th Cir.2004); *United States v. Kelly*, 35 F.3d 929, 933 (4th Cir.1994). The legal standard applied by the SCAWV is thus not contrary to federal law.

The SCAWV affirmed the circuit court's reasoning that Molineaux did not satisfy his burden under *Franklin* to establish a violation of his due process rights. (ECF No. 26-36 at 8). It noted that "[t]he fact that [Molineaux] did not confess to all investigating

officers does little to discredit Trooper Crowder's testimony concerning a confession," and the timing of the production of Officer Crowder's notes about the confession did not establish that the testimony was false. (*Id.*). Further, the SCAWV pointed out that the "circuit court found that [Molineaux] presented no evidence showing that the prosecutor knew or should have known any such testimony was false." (*Id.*).

Molineaux raises essentially the same arguments here as he did before the state court, noting the suspicious nature of the disclosure of Officer Crowder's notes of the alleged confession. (ECF Nos. 21 at 16, 46 at 1–14). However, Molineaux does not at any point explain how the state courts' decisions, made after conducting an evidentiary hearing where some of the evidence now cited was obtained, were unreasonable. While Molineaux maintains that he never confessed to Officer Crowder, a federal court cannot supplant the judgment of a state court when, as here, the SCAWV's decision was not contrary to or based on an unreasonable application of federal law or unreasonable determination of facts, as required by 28 U.S.C. § 2254(d)(1)–(2). The circuit court held an evidentiary hearing and considered the record of Molineaux's criminal case in its decision, and Molineaux's contentions here do not constitute "clear and convincing evidence" of an error. 28 U.S.C. § 2254(e)(1); *see Jones v. Seifert*, 808 F. Supp. 2d 900, 921 (S.D.W. Va. 2011) ("In short, Jones cannot overcome a state-court factual determination that is fatal to his claim: that no credible or corroborating evidence exists that would show that the State knew or should have known of the perjured testimony."). The SCAWV's decision affirming the circuit court's findings, correct or not, is not unreasonable. The undersigned **FINDS** that Molineaux is not entitled to relief based on the prosecutor's use of Officer Crowder's allegedly false testimony about Molineaux's confession.

### 2.    *Withholding exculpatory evidence*

Turning to *pro se* Ground Two, Molineaux alleges that his rights were violated due to the prosecution's withholding of exculpatory evidence. (ECF No. 1-1 at 21). He claims that, at his omnibus evidentiary hearing, the prosecutor admitted that the "only eye witness to these murders who had no reason to lie identified Mr. Brandon R. Britto as the actual shooter of both her mother and father." (*Id.*). He claims that the Stepps' young daughter, Courtney, had previously identified Britto as the shooter because in her description of the men who came into her home and brutally killed her parents she said the shooter had an unusual hairstyle like Britto's. (*Id.* at 22–23). Molineaux asserts that this testimony would have been exculpatory as to his criminal liability and also valuable to impeach Officer Crowder's testimony that Molineaux had confessed to the murders. (*Id.* at 23–25). He further claims that the prosecutor failed to disclose that some items were "forensically tested" and "the test result was negative." (*Id.* at 25). He acknowledges the position taken by the circuit court, the SCAWV, and Respondent that the supposedly exculpatory evidence would not have been helpful to Molineaux's case given that he was convicted of felony murder and admitted that he was present for the shooting, but still presses that he could have proven that he was not the shooter. (*Id.*). In his amended petition, Molineaux reiterates that the prosecution withheld exculpatory evidence, "failed to present critical eyewitness testimony to the jury, and failed to forensically test vital physical evidence that would likely have been exculpatory" to Molineaux. (ECF No. 21 at 14). He claims that police and prosecutorial misconduct "has substantially tainted his conviction and was in clear violation of his Constitutional rights as set forth in the Fourth, Fifth, Sixth and fourteenth Amendments." (*Id.*).

Respondent notes that Molineaux "does not identify the supposed exculpatory evidence" and his claims are thus without merit. (ECF No. 27 at 29). As to the prosecution's refusal to call the Stepps' young daughter, Respondent points out again that even if the daughter had identified Britto as her parents' killer, such evidence would not have been exculpatory given that Molineaux has admitted to being present at the scene of the crime. (*Id.*). The SCAWV, affirming the circuit court's denial of Molineaux's habeas petition, reasoned that Molineaux failed "to substantiate that any evidence was suppressed by the State" and that he failed "to explain how any alleged failures prejudiced him at trial" considering that Molineaux admitted to being present at the murders and was convicted under the felony murder rule. (ECF No. 26-36 at 7).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryand*, 373 U.S. 83, 87 (1963). "To establish a *Brady* violation, the accused must demonstrate that the evidence was" (1) "suppressed by the prosecution;" (2) "favorable to the defendant, either because it [was] exculpatory or impeaching;" and (3) "material." *Horner v. Nines*, 995 F.3d 185, 204 (4th Cir. 2021). "Favorable evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 206 (internal quotation marks and citations omitted). A finding of materiality is essential to the conclusion that a criminal defendant's rights were violated; *Brady* does not "automatically require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed

the verdict." *United States v. Bagley*, 473 U.S. 667, 677 (1985) (internal quotation marks and citations omitted).

Again, Molineaux does not explain how the state courts' conclusions were contrary to federal law, or an unreasonable application of law or determination of fact. The SCAWV appears to base its rejection of Molineaux's claim on the lack of support for a finding that the prosecution suppressed evidence and the lack of materiality of the supposedly exculpatory evidence. (ECF No. 26-36 at 4, 7). Molineaux claims that the supposedly-withheld evidence would have shown that Britto, rather than Molineaux, actually killed the Stepps while Molineaux only watched. The question for this Court is thus a simple one: was it unreasonable for the SCAWV to conclude that evidence about the identity of the Stepps' killer was not material? The answer is no.

As has been pointed out repeatedly through the decades of litigation of these claims, Molineaux was convicted and sentenced based on a theory of felony murder. In addition to the popularly-understood type of murder that involves a premeditated, deliberate act of killing, West Virginia also defines murder to include killings that take place "in the commission of" certain felonies, including burglary and robbery. W. Va. Code § 61-2-1. It has long been settled that, under West Virginia law, conviction of murder based on an underlying felony does not require a finding that the accused personally, deliberately killed the victims. *State v. Sims*, 162 W. Va. 212, 223 (1978) ("[T]he homicide need not be intentional; it is sufficient if it occurs accidentally during the commission of, or the attempt to commit, the enumerated felony."). "[T]he elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim

as a result of injuries received during the course of such commission or attempt." *State v. Williams*, 172 W. Va. 295, 311 (1983).

At his sentencing, the circuit court took great pains to explain that Molineaux would not be sentenced for the burglary and robbery charges, as West Virginia law prohibits punishment for both felony murder and the underlying felony on which the murder conviction is based. (ECF No. 26-7 at 27–28). While the prosecution alleged that Molineaux killed the Stepps and presented evidence in support of that view, the identity of the person who actually killed the victims in a felony murder case is not elemental to a conviction for felony murder. *See Montgomery v. Ames*, 241 W. Va. 615, 619 (2019) (noting that the identity of the shooter who fired the fatal bullet was not relevant in a prosecution for felony murder).

In *Flanders v. Meachum*, the United States Court of Appeals for the Second Circuit ("Second Circuit") reversed the district court's grant of a § 2254 petition on facts similar to these. *Flanders v. Meachum*, 13 F.3d 600 (2d Cir. 1994). The Second Circuit found that the state court's holding was not unreasonable when it found that supposedly-exculpatory evidence that another individual had actually killed the victims was not material when the habeas petitioner was convicted of felony murder, even if such evidence could have affected the jury's decision to recommend mercy. According to the state court, "[t]he testimony implicating [the petitioner's codefendant] as the person who stabbed the victim does not provide a defense to felony murder because there was a basis in the evidence for the jury reasonably to have found that [the petitioner] was a participant in the felony." *Meachum* at 604. The Second Circuit's ruling relied on principles of comity and federalism described by the Supreme Court in considering § 2254 petitions, counseling deference to state courts' decisions as the states

"possess primary authority for defining and enforcing their own criminal law." *Id.* (citing *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993)).

Much like the state court at issue in *Meachum*, the SCAWV routinely affirms felony murder convictions for those who, by all accounts, did not actually kill the victim. *See, e.*g., *State v. Wade*, 200 W. Va. 637, 642 (1997) (death of a victim following defendant's delivery of a controlled substance); *State v. Jenkins*, 229 W. Va. 415, 423, 729 S.E.2d 250, 258 (2012) (same); *Bowers v. Ballard*, No. 2:11-CV-73, 2012 WL 6853540, at *1 (N.D.W. Va. Dec. 18, 2012), *report and recommendation adopted*, No. 2:11-CV-73, 2013 WL 149591 (N.D.W. Va. Jan. 14, 2013) (same); *State v. Sims*, 162 W.Va. 212 (1978). *See also Flack v. Ames*, No. CV 1:17-04381, 2019 WL 4780811, at *2 (S.D.W. Va. Sept. 30, 2019). The finding of a jury that the defendant committed the underlying offense necessary to convict the defendant of murder is "paramount." *State v. Hamill*, No. 18-0624, 2020 WL 261733, at *7 (W. Va. Jan. 17, 2020) ("Accordingly, despite any inconsistencies, the jury found that sufficient evidence existed to convict petitioners of felony murder and conspiracy to commit robbery. This jury determination is paramount, and we will not set it aside under the circumstances presented to us."); *State v. Newman*, No. 17-1040, 2019 WL 2406494, at *4 (W. Va. June 7, 2019) ("The jury determination is paramount, and we will not set it aside under the circumstances presented to us ... [The] evidence is sufficient to support Mr. Newman's criminal conviction of both conspiracy to commit robbery and the resultant felony murder.").

Likewise, significant evidence, including Molineaux's own testimony in his state habeas proceedings, shows that Molineaux participated in the underlying felonies for which he was convicted. Molineaux does not dispute that he was among the group that went to the Stepps' home on the night they were killed; in fact, he testified at his omnibus

habeas corpus hearing that he watched Britto kill the Stepps. (ECF No. 26-29 at 87). He does not allege that he did not participate in the robbery or burglary for which he was convicted, nor does he dispute that the Stepps died "in the commission" of the crimes. On these facts, evidence concerning the identity of the shooter would have no effect on Molineaux's guilt and he cannot show a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Accordingly, the undersigned **FINDS** that the SCAWV's decision affirming the circuit court's denial of Molineaux's habeas petition on the basis that the purportedly withheld evidence was immaterial runs afoul of no federal law, nor does it involve an unreasonable determination of facts.

### 3.     Biased, racist, prejudicial statements

In Ground Thirteen, he alleges that his rights were violated because of biased, racist, and prejudicial statements of the judge and prosecutor. (ECF No. 1-5 at 1). Molineaux cites to the voir dire section of his trial transcript where the prosecutor sought to use one of its strikes on a single unemployed black man, and notes that, though the prospective juror did not seem to remember, the prosecutor recalled providing family law services to him in the past. (*Id.* at 1–2).

In addressing improper comments by prosecutors, the Supreme Court has instructed that "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly,* 416 U.S. at 643); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (recognizing that *Darden* is clearly established federal law under AEDPA relevant to claim of improper comments by prosecutor). The Fourth Circuit has explained that, in analyzing a claim related to a

prosecutor's purported improper comments, a court should look to a number of factors, including "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters [; ] ... (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel [;] ... and (6) whether curative instructions were given to the jury." *United States v. Baptiste*, 596 F.3d 214, 227 (4th Cir. 2010) (quoting *United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998)) (ellipses in original).

As Respondent notes, Molineaux apparently did not present this claim to the SCAWV when litigating his state habeas issues; thus, it appears to be unexhausted. (ECF No. 36 at 20). Regardless, Molineaux does not state a valid challenge on this ground. Molineaux makes no attempt to explain how the prosecutor's acknowledgment of the prospective juror's race, lack of children, employment status, or reputation affected his rights. The statement was not made in the presence of the jury and could not have influenced the jury's perception of Molineaux in any way. Furthermore, though the prosecutor apparently wanted to strike the prospective juror based on his personal knowledge of and familiarity with the individual, the judge asked that the juror not be struck and the prosecutor agreed to strike a different juror. (ECF No. 26-3 at 122–24). Finally, the topic of the juror's race was raised for the purpose of ensuring that the prosecution was not purposely striking African-American jurors solely because of their race. In other words, to protect Molineaux's right to a fair trial. (*Id.* at 119-24). Thus, the undersigned **FINDS** that Molineaux is not entitled to relief on this ground.

### B.    Ineffective Assistance of Counsel

In Grounds Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Fourteen, and Seventeen of his original *pro se* petition and the second ground of his amended petition, Molineaux asserts that his constitutional rights were violated because his counsel was ineffective. ECF Nos. 1-2 at 1, 16, 22; 1-3 at 4, 6, 12, 20, 25, 28, 30; 1-6 at 1, 9; 21 at 22–34). The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686. While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate … defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88, 694.

When assessing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Review of trial counsel's investigation is considered from counsel's perspective at the time, as well as the professional norms then prevailing. *United States v. Higgs*, 663 F.3d 726, 739 (4th Cir. 2011). Trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th. Cir. 1995). Courts will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all the circumstances. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th. Cir. 1977).

Accordingly, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla*, 559 U.S. at 371.

As Molineaux raises his claim of ineffective assistance of counsel in a § 2254 petition, his claim must overcome both the *Strickland* standard and the barrier imposed by § 2254(d), resulting in review that is "doubly" deferential to the decision of the state court. *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009). In *Harrington v. Richter*, the Supreme Court made clear that relief in these circumstances should be granted only sparingly. 562 U.S. at 102. The *Harrington* court clarified that the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Id.* at 101. This standard of review recognizes that for the "purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* (quoting *Williams*, 529 U.S. at 410). "If this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Habeas review under § 2254(d) is intended to function as a "guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-103.

Molineaux raises many grounds to support the proposition that his counsel was ineffective at essentially every stage of his criminal proceedings. The undersigned addresses each ground in the analysis below, grouping individual grounds according to the issue presented where appropriate.

### 1.    *Failure to object to statements*

In Ground Three, Molineaux contends that his trial counsel was ineffective for failing "to object to statements obtained in violation of [his] Fifth Amendment rights."

33

(ECF No. 1-2 at 1). He claims that he attempted to invoke his right not to be interrogated without counsel present, but he was physically forced to sign a form waiving this right by "Sergeant William T. Jones." (*Id.*). Molineaux claims that Officer Crowder's statement testifying about the conversation in which Molineaux confessed to killing the Stepps was obtained in violation of his due process rights and was "highly prejudicial" as the alleged confession was the "cornerstone" of the State's case, yet his counsel failed to object to the use of the testimony. (*Id.* at 15–16). The SCAWV, in addition to adopting and incorporating the circuit court's findings and conclusions on this issue on appeal, noted that "counsel was not ineffective in this regard as the issue was addressed at a suppression hearing." (ECF No. 26-36 at 8). The circuit court determined that Molineaux "offered no [credible] evidence that he requested an attorney prior to or during police questioning" and he could not satisfy either prong of *Strickland*. (*Id.* at 20).

As has already been discussed above at length, Molineaux cannot show prejudice stemming from Officer Crowder's testimony about Molineaux's alleged confession because the identity of the shooter in this case was irrelevant. The confession was not the "cornerstone" of the State's case against Molineaux; Officer Crowder was only one of several witnesses that testified about Molineaux's involvement in the events and the State did not need to prove that Molineaux was the one to pull the trigger to prove his culpability for murder. Thus, it was reasonable for the SCAWV to affirm the circuit court's determination that Molineaux could not satisfy the *Strickland* standard. Furthermore, the SCAWV agreed with the circuit court that Molineaux failed to establish a violation of *Miranda* rights, and Respondent notes that Molineaux did not present evidence that he was in any way coerced to sign the waiver at the omnibus evidentiary

hearing on habeas review. (ECF Nos. 26-36 at 20; 36 at 13–14). Thus, the undersigned **FINDS** that the decision of the SCAWV presents no conclusion contrary to or unreasonably applying federal law and does not rely on any unreasonable factual findings and Molineaux is not entitled to relief on this ground.

In Ground Ten, Molineaux claims his counsel was ineffective for failing to object to the trial testimony of Officer Crowder, Officer Pauley, Officer Jones, and Pleasant on the basis that some statements contained impermissible hearsay. (ECF No. 1-3 at 25–27). He maintains that Pleasant's testimony that John Stepp "owed somebody money in Bluefield" provided evidence of a motive for the killing. (*Id.* at 25). He reasons that because his counsel did not object to Officer Pauley's and Officer Jones's testimony that Britto said the gun found in his apartment belonged to Molineaux, "the jury believe[d] that the gun belonged to" him. (*Id.* at 26). He reiterates that Officer Crowder's testimony was based on hearsay and that he provided several incorrect statements about the events of the night the Stepps were killed. (*Id.* at 27).

As with his similar claims, Molineaux cannot show prejudice resulting from counsel's failure to object to this testimony as Molineaux's murder convictions are based on his participation in the underlying felonies for which he was convicted. Simply put, as the SCAWV's determination that the identity of the killer in these circumstances was immaterial was not unreasonable, Molineaux cannot obtain federal habeas relief on the basis that the testimony supposedly tainted by hearsay implicated him as the Stepps' shooter. Thus, because counsel's failure to object to this testimony had no prejudicial effect on the outcome of Molineaux's case, the undersigned **FINDS** that he is not entitled to relief on this ground.

### 2.    *Failure to call certain witnesses*

In Grounds Four, Five, and Six of his pro se petition, Molineaux claims that his counsel was ineffective for failing to call certain witnesses. In Ground Four, Molineaux asserts that his counsel was ineffective for failing to call the Stepps' young daughter to the stand so that she could provide a description of her parents' shooter. (ECF No. 1-2 at 17–22). In his amended petition, Molineaux argues that Molineaux's counsel was ineffective for failing to "interview and procure the testimony of defense witnesses," identifying only Courtney Stepp as a witness who should have been, but was not, called to testify. (ECF No. 21 at 27–32).

This claim is plainly meritless. Again, whether or not Molineaux pulled the trigger, his guilt for the murder charges is based on the underlying felonies he committed and he was in no way prejudiced by his attorney's failure to call Courtney Stepp as a witness to describe someone else as her parents' killer. The SCAWV adopted and incorporated the circuit court's findings that Molineaux's counsel's decision not to call Courtney Stepp as a witness was sound "trial strategy." (ECF No. 26-36 at 8, 17). This was not unreasonable. Refusing to call a young child who had witnessed the brutal killing of her parents to the stand, particularly when it would have had no exculpatory value, is clearly a strategic choice that is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. The undersigned **FINDS** that Molineaux is not entitled to relief on this ground because the SCAWV's decision involved no determination that was contrary to or unreasonable under federal law, or was an unreasonable finding of fact.

In Ground Five, Molineaux claims his counsel was deficient for failing to call Officer Pauley to the stand during his suppression hearing to contradict Officer Crowder's recollection of Molineaux's confession. (ECF Nos. 1-2 at 23–32; 1-3 at 1–3).

The SCAWV adopted and incorporated the circuit court's decision which concluded that the result of the trial would not have been different if Officer Pauley were called at the suppression hearing or trial. (ECF No. 26-36 at 29). In accord with the above discussion, Molineaux cannot obtain relief on this ground because it was not unreasonable, legally or factually, to conclude that Molineaux was not prejudiced by Officer Crowder's testimony. Moreover, as the SCAWV pointed out, the fact that Molineaux did not confess to all of the law enforcement officers is not proof that Officer Crowder was lying. Thus, the undersigned **FINDS** Molineaux is not entitled to relief on this ground.

In Ground Six, Molineaux asserts that his counsel was ineffective for failing to call Lieutenant Helton of the Bluefield Police Department to the stand to testify that Molineaux did not confess. (ECF No. 1-3 at 4–5). For reasons identical to those contained in Grounds Four and Five, Molineaux can show no prejudice stemming from his counsel's failure to rebut evidence of the confession. Thus, the undersigned **FINDS** Molineaux is not entitled to relief on the ground because he can show no federally-cognizable error on the part of the state court.

### 3.   *Failure to rebut Officer Crowder's testimony*

In Ground Seven, Molineaux asserts that his counsel was ineffective for failing to rebut or impeach Officer Crowder's testimony that he confessed to shooting the Stepps. (ECF No. 1-3 at 6–11). Having already determined that the evidence contained in Officer Crowder's testimony was immaterial, Molineaux cannot demonstrate prejudice as to the confession testimony. Furthermore, nothing in the record supports a conclusion that the jury believed Officer Crowder or the confession about which he testified; by convicting Molineaux on a theory of felony murder, the jury implicitly rejected Officer Crowder's testimony that Molineaux confessed to killing the Stepps. Thus, the undersigned **FINDS**

he is not entitled to relief on this ground.

### 4.    *Conflict of interest*

In Ground Eight, Molineaux claims that his counsel, McGinnis Hatfield, had a conflict of interest. (ECF No. 1-3 at 12). He claims that Hatfield was a judge for the City of Bluefield and Molineaux was coerced into allowing Hatfield to continue representing him. (*Id.* at 13–19). Though he includes transcript excerpts that show the circuit court made a careful inquiry into his awareness and acceptance of Hatfield's judicial position, he claims that this colloquy required him to "speculat[e] as to the potential manifestations of what would occur at trial concerning the conflict of interest." (*Id.* at 18). He admits that this issue was never raised in his previous habeas proceedings. (*Id.* at 19).

Notwithstanding Molineaux's failure to exhaust state court remedies, this claim is meritless and must be dismissed. Molineaux's provides no example whatsoever of any prejudicial effects caused by his counsel's role as a city judge in another West Virginia county. The Sixth Amendment "requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991). "Adverse effect cannot be presumed," however, "from the mere existence of a conflict of interest." *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir.2002). In order to prevail on such a claim, Molineaux must show that (1) his counsel operated under a conflict of interest and (2) such conflict "adversely affected his lawyer's performance." *United States v. Nicholson*, 611 F.3d 191, 205 (4th Cir. 2020) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). While Molineaux laments that he was required to decide whether to keep Hatfield's representation before any situations arose that may have affected Hatfield's

38

ability to loyally represent him, he does not now reveal any such instances when Hatfield rendered inadequate performance based on this supposed conflict. This claim is somewhat similar to a claim Molineaux made on state habeas review that Hatfield did not include an inquiry on the questionnaire for potential jurors about whether they had ever appeared before Hatfield as a judge, to which the circuit court found no merit. (ECF No. 26-36 at 26–27). He provides no new information here and the record bears no indication that the jury was in any way aware of or influenced by Hatfield's position as a city judge. Accordingly, the undersigned **FINDS** that Molineaux is not entitled to relief on this claim.

### 5.   *Denial of the right to testify*

In his amended petition, Molineaux argues that his trial counsel was ineffective for refusing to allow him to testify at trial even though he expressed a desire to do so, claiming that his counsel told him that he did not believe Molineaux's version of events and a jury would not believe him either. (ECF No. 21 at 25–27). The SCAWV, acknowledging this claim, did not spend significant time discussing it but affirmed the circuit court's finding that Molineaux did not demonstrate that his counsel was ineffective in this regard. (ECF No. 26-36 at 4–6).

Criminal defendants have a right to testify on their own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987) ("[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 301 (1973). However, in this case, while Molineaux argues that his counsel prevented him from testifying, Respondent asserts and the record reflects that Molineaux was advised of his right to testify and knowingly,

intelligently, and voluntarily waived that right. (ECF No. 26-6 at 16–17). Though his counsel admittedly advised him not to testify, it is clear that Molineaux was aware of and decided not to exercise that right. Although Molineaux contends that counsel doubted Molineaux's story, the record does not show that he was impermissibly coerced into this decision or forced to choose between testifying or remaining represented by counsel. *United States v. Midgett*, 342 F.3d 321 (4th Cir. 2003) (holding that state court decision was unreasonable when the record showed the trial court forced defendant to choose between testifying on his own behalf or keeping his attorney). Unlike the defendant in *Midgett*, Molineaux made no protest or gave any indication that he wanted to testify; he affirmed that counsel had discussed the option with him on numerous occasions and he did not want to take the stand. (ECF No. 26-6 at 16–17).

The mere fact that counsel advised him not to testify and that he was convicted despite taking that advice does not indicate that counsel's performance was constitutionally deficient. *United States v. Mullins*, 315 F.3d 449 (5th Cir. 2002) (holding that counsel's performance is deficient when counsel overrides the wishes of the defendant but distinguishing between cases where a defendant waives the right after being advised). When, as here, the circuit court made it abundantly clear to Molineaux that he had the right to testify on his own behalf and Molineaux opted not to on the advice of counsel, Molineaux cannot show that he suffered a deprivation. *Marshall v. Williamson*, No. CIV. A. 2:07CV70, 2008 WL 2945518, at *10 (N.D.W. Va. July 28, 2008) (denying § 2254 petition on the basis that no clear and convincing evidence showed that the state court's factual determination that the defendant knowingly and intelligently waived his right was incorrect). Furthermore, the advice offered by Molineaux's counsel was not unusual or extreme. Criminal defendants are routinely

advised not to testify because of the dangers involved in allowing the prosecutor to cross-examine the defendant. As the SCAWV did not render a decision that would implicate the standard set forth in § 2254, the undersigned **FINDS** that Molineaux cannot obtain relief on the basis that his counsel refused to allow him to testify.

### 6. *Failure to investigate physical evidence*

In *pro se* Ground Eleven and in his amended petition, Molineaux argues that his counsel was ineffective by failing to independently investigate items of physical evidence after the State did not do so, offering the unsupported proposition that "[t]he physical evidence not tested by the State or [Molineaux's] counsel was exculpatory in nature." (ECF Nos. 1-3 at 28; 21 at 22–24). He claims that the physical evidence would have shown that Britto was the shooter. (ECF No. 1-3 at 28–29). Respondent counters that Molineaux fails to demonstrate how any such evidence would have been exculpatory given his admission at the omnibus evidentiary hearing that he was present at the crime scene and witnessed the murders, and further insists that other evidence presented in the case strongly suggested that counsel "had no reasonable belief that independent testing would yield a different result." (ECF No. 27 at 34). The SCAWV affirmed the circuit court's finding on habeas review that Molineaux's mere "beliefs" that the State withheld exculpatory physical evidence from him are insufficient to support a finding that counsel was ineffective for failing to investigate. (ECF No. 26-36 at 28).

Under *Strickland*, counsel "has a duty to make reasonable investigations. ... [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "To prevail on an [ineffective assistance of counsel] claim based on a failure to investigate, a petitioner must specify 'what an adequate

investigation would have revealed.'" *Walton v. Ballard*, No. 2:15-CV-11423, 2018 WL 1582737, at *7 (S.D.W. Va. Mar. 30, 2018), *appeal dismissed*, 738 Fed. Appx. 159 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 2743 (2019) (quoting *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990)). "An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out." *Campbell v. United States*, No. 5:07-cv-0120, 2009 WL 6327477, at *11 (S.D.W. Va. Nov. 6, 2009) (citations omitted), *report and recommendation adopted*, No. CIVA 5:07-0120, 2010 WL 1379992 (S.D.W. Va. Mar. 31, 2010).

The undersigned agrees with Respondent that Molineaux's admissions that he was present at the crime scene and witnessed the murders are dispositive of this issue. Even if, as Molineaux presses, counsel had had all possible items of physical evidence tested and results showed that Molineaux did not shoot the Stepps, he would be no less guilty of their murders given the circumstances. It was not unreasonable or contrary to federal law for the SCAWV to affirm the circuit court's findings that counsel was not ineffective; thus, the undersigned **FINDS** that Molineaux is not entitled to relief on this ground.

### 7.    *Failure to present mitigating evidence*

In *pro se* Ground Twelve, Molineaux asserts that his counsel failed to present mitigating evidence at his trial. (ECF Nos. 1-3 at 3, 30–31; 1-4 at 1–10). He claims that if his counsel had obtained the statements of Courtney Stepp or rebutted the testimony of Officer Crowder, the jury would not have believed the testimony of others who provided evidence of Molineaux's involvement. (ECF No. 1-4 at 1–10). Respondent disagrees, citing the SCAWV's findings that Molineaux has not identified any evidence

mitigating his involvement. (ECF No. 36 at 18).

The undersigned agrees with Respondent. This claim, as with Molineaux's others along these same lines, does not reveal any improper decision-making on the part of the SCAWV in affirming the denial of his state habeas petition. As discussed, the SCAWV's finding that the identity of the shooter in a felony murder under these circumstances was immaterial was not unreasonable, and thus it was not unreasonable to find no prejudice on the basis Molineaux describes. Again, Molineaux presents no evidence that he was not involved in the robbery and burglary for which he was convicted, and even if evidence established that Britto pulled the trigger, Molineaux would be no less guilty of felony murder. The basis he describes simply would not have affected his guilt for the crimes. The undersigned **FINDS** that Molineaux is not entitled to relief on this ground.

### 8.    *Failure to object to or appeal robbery instruction*

In Ground Fourteen, Molineaux asserts that his counsel was ineffective for failing to object to the circuit court's robbery instruction at trial. (ECF No. 1-6). Jury instructions violate a criminal defendant's due process rights when the instructions fail to require the State to prove every element of an offense. *See Sandstrom v. Montana*, 442 U.S. 510, 520–21 (1979). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (internal quotation marks and citations omitted). The language in the robbery instructions given at Molineaux's criminal trial exactly tracks West Virginia Code § 61-2-12, which provides that a person is guilty of first-degree robbery by robbing or attempting to rob another person by "(1) [c]ommitting violence to the person, including,

but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon."

Molineaux insists that the jury instruction given at his trial did not contain all the essential elements of the crime of robbery because the language in the instructions merely "states the ways, means, and manners by which a robbery" is committed. (ECF No. 1-6 at 2). Respondent argues that the SCAWV's basis for denying his claim was not unreasonable because the SCAWV concluded that the robbery instruction followed the language of the statute and Molineaux could not show that he was held pursuant to a void sentence when he was convicted of both burglary and robbery and either offense could be used as a predicate to convict him of felony murder. (ECF No. 36 at 19).

Respondent is correct. As Molineaux maintains, West Virginia's statutory definition of robbery does not alter the basic common law elements of robbery but merely defines the difference between aggravated and nonaggravated robbery. *See State v. Harless*, 168 W.Va. 707 (1981); *State v. Collins*, 174 W. Va. 767, 773 (1984). However, as discussed above, Molineaux was convicted of two qualifying offenses—robbery and burglary—that made him criminally liable for the murders of the Stepps under West Virginia law. *See* W. Va. Code § 61-2-1. He makes no challenge to the circuit court's instructions on burglary. It is therefore unnecessary for the resolution of this ground to parse the exact language the circuit court used in its jury instructions for the robbery offense as, in line with Prong Two of the *Strickland* standard, Molineaux cannot show prejudice. The SCAWV did not render a decision contrary to or unreasonably applying federal law or unreasonably determining the facts in resolving this issue. Therefore, the undersigned **FINDS** that Molineaux is not entitled to relief.

In Ground Seventeen, Molineaux argues that his counsel was ineffective for failing to challenge the robbery instructions on appeal. (ECF No. 1-6 at 9–10). The undersigned analyzes these claims with the caveat that "appellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (citing *Griffin v. Aiken*, 775 F.2d 1226, 1235 (4th Cir. 1985)). On appeal from the denial of his habeas petition where he raised a similar issue, the SCAWV held that Molineaux's issues with the robbery instructions did not rise to the level of "plain error" because, as the circuit court found, the truth-finding function of the trial court was not impaired. (ECF No. 26-36 at 6–7). Furthermore, the SCAWV found that even assuming the robbery instruction was erroneous, such error is harmless because his conviction for burglary would be unaffected. (*Id.* at 7). It is clear that, even assuming Molineaux's counsel was deficient for failing to raise the issue of robbery instructions on appeal, Molineaux suffered no prejudice as the contention would not been "plain error" affecting his conviction or sentence in any way. Thus, the undersigned **FINDS** that Molineaux is not entitled to relief on Ground Seventeen.

### 9.    *Failure to obtain a psychological evaluation*

In his amended petition, Molineaux argues that his counsel was ineffective for failing to submit him for a forensic psychological evaluation. (ECF No. 21 at 32–34). He claims that his mental health history was easily known, and although he told counsel he wanted to be evaluated, such evaluation did not take place. (*Id.*). Respondent argues that although Molineaux testified at his omnibus evidentiary hearing in the state court that he was bipolar and had been abused as a child, no evidence exists showing that he was not competent to stand trial, and he has not alleged that he was incompetent. (ECF No.

27 at 36–37). Further, Respondent points out that Molineaux now says he wished to testify in his own defense, demonstrating that he understood the proceedings and no condition prevented him from participating in the criminal adjudication process. (*Id.* at 37). The SCAWV affirmed the circuit court's decision that found that Molineaux was not entitled to relief. The circuit court held that other than Molineaux's "self-serving statements," no evidence indicated that he had a mental disorder that "would have provided a viable defense at trial." (ECF No. 26-36 at 25–26). The circuit court found that Molineaux's statements that he had suffered from mental disorders years prior to the crimes and that such disorders "could" have explained his choices were not credible. (*Id.* at 26).

Resolution of this ground on state habeas review was a fact-specific inquiry, and the factfinding of the circuit court and the SCAWV's affirmation of its decision was not unreasonable. The circuit court relied on the testimony of Molineaux's trial counsel that counsel did not recall Molineaux discussing psychological issues with him or requesting an evaluation, and reasonably determined that he was not entitled to relief as the court was not persuaded that Molineaux's counsel was deficient under the *Strickland* standard. As discussed above, a § 2254 petitioner bears a heavy burden in overcoming findings of fact made by a state court after conducting an evidentiary hearing; this Court has no reason to second-guess the circuit court's evaluation of Molineaux's or his former counsel's credibility. *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). Thus, because Molineaux has not made any showing that the state court's findings of fact were unreasonable, the undersigned **FINDS** that he is not entitled to relief on this ground.

### 10.    *Failure to move for a change of venue*

In his amended petition, Molineaux argues that his counsel was ineffective for

failing to move for a change of venue due to the notoriety of his case in McDowell County. (ECF No. 21 at 34). Without providing any evidence in support, Molineaux proclaims that "[t]he murder of two individuals will always by definition be a widely-covered event in such small communities," especially because Molineaux is black and the victims were white. (*Id.*). Respondent disagrees, insisting that notoriety alone does not justify a change of venue and Molineaux offers no evidence that the jury was biased against him. (ECF No. 27 at 37–38). The SCAWV affirmed the circuit court's findings that Molineaux's counsel was not deficient as his attorneys discussed the issue with Molineaux and the circuit court many times and had no trouble impaneling an impartial jury. Indeed, the circuit court agreed to consider such a motion if an impartial jury could not be seated, but such a motion never became necessary, and Molineaux failed to establish that the result of his trial would have been different. (ECF No. 26-36 at 18).

Under the Sixth and Fourteenth Amendments, criminal defendants are entitled to an impartial jury. *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). Here, there is no indication that counsel's failure to move for a change in venue affected Molineaux's rights in any way. Despite his broad claim that violent crimes are "by definition" notorious events in small communities, Molineaux presents absolutely no evidence that the jury that convicted him was biased, or that he would have been entitled to a change of venue. In West Virginia, "[w]idespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against him is so great that he cannot get a fair trial." *State v. Gangwer*, 286 S.E.2d 389, 392 (W. Va. 1982). His unsupported claim that people in the community were aware of the Stepps' murders not only provides no basis for the conclusion that the jury was biased, but also fails to demonstrate that Molineaux's

counsel rendered deficient representation by not moving for such a change. *See Graybill v. Clarke*, No. 7:11-cv-00331, 2012 WL 3133691, at *21 (W.D. Va. July 31, 2012) (denying similar ineffective assistance of counsel claim where petitioner failed to present evidence of "widespread prejudice on the part of the jury").

Further, Molineaux does not make any specific allegations that he was prejudiced by counsel's failure to move for a change of venue. "In order to prove prejudice, [Molineaux] would have to prove that had the venue of his trial been moved, he would have been acquitted." *Blackmon v. Ballard*, No. 2:09-cv-00789, 2010 WL 3703031, at *37 (S.D.W. Va. Aug. 2, 2012), *report and recommendation adopted*, 2010 WL 3702705 (S.D.W. Va. Sept. 13, 2010). Molineaux's counsel testified at the omnibus evidentiary hearing that he considered the circuit court to be "the best place in the United States to try a homicide case" based on his lengthy experience as a defense attorney and that he "[a]bsolutely" considered it a judgment call to keep the case in the circuit court. (ECF No. 26-29 at 152–53). Under the circumstances, and given that Molineaux's counsel's testimony that he considered the circuit court a favorable venue, it is clear that counsel's failure to move for a change of venue was simply a "virtually unchallengeable" strategic decision. *Bell v. Evatt*, 72 F.3d 421, 429 (4th. Cir. 1995). Thus, the circuit court's decision was not contrary to or an unreasonable application of federal law and rested on no unreasonable finding of fact. Accordingly, the undersigned **FINDS** that Molineaux is not entitled to relief on this ground.

### C.    Judicial Misconduct

In *pro se* Grounds Thirteen, Fifteen, Sixteen, Eighteen and Nineteen, Molineaux alleges that his rights were violated because of misconduct on the part of the judiciary and staff of the circuit court. Each of the grounds he raises to that effect are addressed

separately.

### 1.    *Biased, racist, and prejudicial statements*

In Ground Thirteen, Molineaux alleges that his rights were violated because of biased, racist, and prejudicial statements made by the judge and prosecutor. (ECF No. 1-5 at 1). He claims that "prejudice occurred because of Judge Murensky['s] friendship with" Molineaux's defense counsel, who the judge "has continued to vigorously defend at every stage." (*Id.* at 2). He points out that the circuit court judge questioned the prosecutor's decision to strike a potential juror based on the prosecutor's own history with the individual and impression of him as an unsavory character, and the judge pointed out that the prospective juror and Molineaux shared some similarities in marital and employment status. (*Id.* at 1–2). Molineaux insists that the record shows that the judge's impression of him was that he was "a no good, no job, single no home, habitual drunk in the community, who hangs on the streets seven days a week drinking and smoking" and "a wino." (*Id.* at 21). He claims the judge "made it absolutely clear how he viewed" Molineaux, noting that the judge refused all of Molineaux's jury instructions. (*Id.*). He claims the judge erred by injecting "his opinion of what evidence should be or not be presented to the jury." (*Id.* at 7). Molineaux again raises the issue of the circuit court's admission of Officer Crowder's testimony about Molineaux's confession, claiming the decision was "bias[ed]." (*Id.*). According to Molineaux, the circuit judge's questioning of defense counsel when counsel argued that Courtney Stepp's statements were exculpatory showed he was biased toward Molineaux, referring to the decision as "flat out racist." (*Id.* at 10–13). He also points out that the circuit court judge denied his request for new attorneys. (*Id.* at 28).

Respondent maintains that this claim is unexhausted as Molineaux did not raise it before the SCAWV on appeal. (ECF No. 36 at 20). Nevertheless, the claim should be rejected as Molineaux is clearly not entitled to relief on the merits. 28 U.S.C. § 2254(b)(2). "Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." *Rose v. Mitchell*, 443 U.S. 545, 555 (1979). Due process guarantees a criminal defendant's right to an impartial trial judge. *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)); *Montgomery v. Uchtman*, 426 F.3d 905, 910 (7th Cir. 2005) (citing same); *Layer v. Lyles*, 598 F. Supp. 95, 98 (D. Md. 1984). "The general presumption is that judges are honest and impartial." *Montgomery*, 426 F.3d at 910. In assessing judicial impartially, the Fourth Circuit has accepted that a judge is not merely a spectator at trial; rather, a judge must ensure that the presentations of counsel are not confusing to the jury and that trials do not become "protracted and costly affairs." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. Ecklin*, 528 Fed. Appx. 357, 362 (4th Cir. 2013). "'A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration' ... do not establish bias or partiality." *United States v. Castner*, 50 F.3d 1267, 1274 (4th Cir. 1995) (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)). In addition, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge ... they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible" *Liteky*, 510 U.S. at 555. A trial judge's participation during trial, however, should "never reach[] the point at which it appears clear to the jury that the court believes the accused is guilty." *Ecklin*, 528 Fed. Appx. at 362 (citations

and markings omitted); *see also United States v. Bencivengo*, 749 F.3d 205, 216 (3d Cir. 2014). Ultimately, "[t]o prevail on a claim of judicial misconduct, [Molineaux] must show that the state trial judge's conduct was so fundamentally unfair as to deprive [him] of [his] constitutional right to due process," and this task is an onerous one. *Paccione v. New York*, 353 F. Supp. 2d 358, 368 (E.D.N.Y. 2005).

The excerpts of transcripts Molineaux cites do not demonstrate bias or racial prejudice, and Molineaux provides no reasoning as to how the judge's decisions are biased besides his own conclusory statements. If anything, the judge's statements about the prospective juror the prosecution sought to strike show that the judge vigilantly attempted to *avoid* racial discrimination in jury selection in response to concerns from Molineaux's defense counsel. Molineaux's assertion that this interaction somehow indicates the judge's racial bias is a stunning misread of the record. The transcript plainly shows that the judge sought an explanation of the reasons the prosecution had for striking the prospective black male juror to ensure the strike was for a legitimate reason and not simply racial animus. (ECF No. 26-3 at 122–24). Moreover, far from demonstrating a racist attitude, the circuit court judge expressed skepticism about the prosecution's stated reasons for striking the prospective juror and insisted the prosecution strike someone else, to which the prosecution acquiesced. (*Id.* at 124).

Molineaux's other claims of bias and racism by the circuit court—the refusal of his preferred jury instructions, rulings on evidentiary matters, and denial of his motion for new appointed counsel—have a less-than-tenuous connection to any purported racial animus. Molineaux simply makes no plausible or logical argument that the judge's decisions were affected in any way by Molineaux's race. Molineaux's claims utterly fail to show that his trial was fundamentally unfair because of racism, bias, or prejudice of

51

the circuit court and the undersigned therefore **FINDS** that he is not entitled to relief on this ground.

### 2. *Erroneous robbery instructions*

In Ground Fifteen, Molineaux contends that the circuit court erred in its instructions on the offense of robbery. (ECF No. 1-6 at 7). This matter was fully addressed above in discussion of Grounds Fourteen and Seventeen. The SCAWV conclusively found that, even assuming the jury instructions on robbery were in some way erroneous, Molineaux's judgment would not be affected as he could not show plain error as a result. (ECF No. 26-36 at 6–7). In accord with analysis above, the undersigned **FINDS** that it was not a contrary or unreasonable application of federal law or an unreasonable determination of fact for the SCAWV to conclude that Molineaux suffered no deprivation of his rights as a result of the circuit court's robbery instruction.

### 3. *Sufficiency of the indictment*

In Ground Sixteen, Molineaux argues that the circuit court erred when it failed to dismiss counts III, IV, VI, and VII in his indictment. (ECF No. 1-6 at 8). He states that the indictment failed to list any items taken during the robbery, the date or approximate time that the alleged offenses were committed as required by West Virginia law. (*Id.*). He also maintains that the conspiracy to commit robbery and conspiracy to commit burglary charges are not eligible underlying offenses to support a conviction for felony murder. (*Id.*). Respondent stresses that this claim does not meet the standard for federal habeas relief because the SCAWV held that the issue was waived as it was not challenged before trial, the indictment was sufficient, and Molineaux's claims of insufficiency are based solely on state law. (ECF No. 36 at 20–22).

"The Fifth Amendment requirement of indictment by grand jury does not apply

to the states, and thus variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the petitioner's right to due process." *Navarrete-Garcia v. McCoy*, No. 1:14-CV-00754, 2015 WL 4924619, at *2 n.5 (M.D.N.C. Aug. 18, 2015) (quoting *Hartman v. Lee,* 283 F.3d 190, 195 n.4 (4th Cir. 2002) and *Ashford v. Edwards,* 780 F.2d 405, 407 (4th Cir. 1985)); *Hinnant v. North Carolina*, No. 5:15-HC-2283-FL, 2016 WL 8653490, at *4 (E.D.N.C. June 27, 2016), *appeal dismissed,* 678 Fed. Appx. 158 (4th Cir. 2017); *Horn v. Ballard*, No. 1:07-CV-00503, 2009 WL 915022, at *21 (S.D.W. Va. Feb. 26, 2009), *report and recommendation adopted in part,* 2009 WL 914879 (S.D.W. Va. Mar. 31, 2009). "The general rule is that the scope of review of a challenged indictment in federal courts upon habeas corpus proceedings is confined to the questions of whether the alleged defects go to the jurisdiction of the trial court or deprive the defendant of the right to be sufficiently informed of the charges against him." *Mechling v. Slayton*, 361 F. Supp. 770, 773 (E.D. Va. 1973); *Munday v. Ballard*, No. 5:12CV135, 2013 WL 3990785, at *12 (N.D.W. Va. Aug. 2, 2013) ("It is clearly established federal law that an indictment is sufficient under the United States Constitution if it, "first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense [...] Furthermore, the sufficiency of a state charging instrument 'is not a matter for federal habeas corpus relief unless the indictment is so defective that the convicting court had no jurisdiction.'") (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974) and *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994), *cert. denied,* 512 U.S. 1289 (1994)).

Molineaux is clearly not entitled to relief on this basis. The SCAWV's decision, which incorporated the findings and conclusions of the circuit court's denial of Molineaux's state habeas petition, was not contrary to or an unreasonable application of federal law. The decision seemed to rest on state law grounds, but insofar as the state courts relied on federal principles, the standard for relief is not met. The issues Molineaux raises—lack of an estimated time of the alleged offenses and description of the stolen property—are insignificant, and do not support a finding that Molineaux was uninformed of the charges against him or that his ability to defend himself was affected in any way. Additionally, his argument that the circuit court should have dismissed the conspiracy charges because they could not form the basis for a felony murder conviction is wholly without merit. Molineaux was innocent of all charges until he was proven guilty and convicted; the circuit court would have had no reason to dismiss the conspiracy charges just because Molineaux was also charged with murder. No provision of state or federal law requires that every count in an indictment support a felony murder conviction. Furthermore, Molineaux was not actually sentenced for the conspiracy charges as West Virginia recognizes punishing someone for both a crime and the underlying conspiracy charges as a violation of that person's right to be free from double jeopardy. (ECF No. 26-7 at 28). The undersigned thus **FINDS** that Molineaux is not entitled to relief on this ground as the SCAWV's decision is not contrary to or an unreasonable application of federal law and involves no unreasonable finding of fact.

### 4.    *Tampering with case numbers and transcripts*

In Grounds Eighteen and Nineteen, Molineaux contends that circuit court staff tampered with the case numbers and transcripts in his case in violation of his due process rights. (ECF No. 1-6 at 11, 13–22). He claims that the use of two different case

numbers during his trial enabled the prosecutor to "hide all the evidence" including information about the "chain of custody" of forensic evidence. (*Id.* at 11–12). He acknowledges that he did not raise this issue before the circuit court on habeas review and that it "cannot be" raised there. (*Id.* at 12). He states that certain statements he remembers hearing during proceedings are not found in the transcripts of those hearings and recounts an instance when he was not able to gain access to some documents that were on the "judge's computer." (*Id.* at 13–14). Respondent contends that this claim should be denied as Molineaux does not state a constitutional violation. (ECF No. 36 at 23).

Molineaux raised his concerns about the use of different case numbers in the circuit court on habeas review, and the circuit court found that he failed to explain how this was important to his case or showed that his rights were violated. (ECF No. 26-36 at 36–37). Nothing presented in the instant petition warrants a different conclusion. Although Molineaux makes vague allusions to supposed improprieties in the disclosure of evidence that may have been obscured by the use of multiple case numbers, nothing in the record supports this hypothesis. Rather than an argument that a decision of the state court was impermissible as required by § 2254, Molineaux offers only mere suspicion that some misdeed has taken place. Thus, the undersigned **FINDS** that Molineaux is not entitled to relief on this ground.

As to the supposedly missing portion of the transcripts, Molineaux's claim is likewise meritless. There is no doubt that "a criminal defendant has a right to a meaningful appeal based on a complete transcript." *United States v. Brown*, 202 F.3d 691, 696 (4th Cir. 2000) (quoting *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir. 1999)). When a transcript is less than complete, the court must determine whether the

alleged omissions or deficiencies justify a new trial. *Huggins*, 191 F.3d at 536. To obtain a new trial based on omissions from a trial transcript, the defendant must show that the transcript errors specifically prejudiced his ability to perfect an appeal. *United States v. Gillis*, 773 F.2d 549, 554 (4th Cir. 1985). According to *Huggins*, prejudice is present when a trial transcript is so deficient that it is "impossible for the appellate court to determine if the [lower] court has committed reversible error." 191 F.3d at 537. There is, however, no constitutionally protected right to a totally accurate transcript. *Dyches v. Martin*, No. 1:12-2838, 2014 WL 1093133, at *3 (D.S.C. Mar. 17, 2014). Furthermore, there is no constitutional right to a trial transcript for collateral appeals. *United States v. MacCollom*, 426 U.S. 317, 323–24 (1976). In determining whether a missing portion of a transcript constitutes grounds for a new trial, the question is whether the petitioner has alleged "deficiencies in his transcripts substantial enough to call into question the validity of his criminal proceedings and the appellate process." *Dyches,* 2014 WL 1093133, at *3.

Simply put, the minor irregularities Molineaux identifies, even if proven, do not show that any of his federal rights were violated. The supposedly omitted or altered portions of the available transcripts are insubstantial and do not call into the question of the validity of the criminal proceedings at issue. The undersigned thus **FINDS** that Molineaux is not entitled to relief on this ground.

In summary, the undersigned has considered all of Molineaux's claims and **FINDS** that no decision of the state court as to his claims involved a legal determination contrary to or unreasonably applying federal law or an unreasonable determination of fact; accordingly, the undersigned **FINDS** that Molineaux's § 2254 petition should be dismissed.

### D.    Molineaux's Motions to Dismiss and for Summary Judgment

In addition to the claims in his petitions, Molineaux also filed two documents styled as dispositive motions. (ECF Nos. 44, 48). His motion to "dismiss" Respondent's motion is not rightly understood as a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure and would more accurately be labeled as a response or reply to Respondent's motion. (ECF No. 44). Accordingly, because the undersigned has determined that Molineaux is not entitled to relief on any of his claims, the undersigned **FINDS** that this so-called motion should be denied. As for Molineaux's motion for summary judgment, the preceding analysis shows that he is not entitled to relief on the claims he asserts in his petition and the undersigned **FINDS** that this motion likewise should be denied. (ECF No. 48).

### IV.    <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** the following:

1. Molineaux's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and Amended Petition, (ECF Nos. 1, 21), be **DENIED**;

2. Respondent's Motions for Summary Judgment, (ECF Nos. 26, 35), be **GRANTED**;

3. Molineaux's motions to dismiss Respondent's motion and for summary judgment, (ECF Nos. 44, 48), be **DENIED**; and

4. This action be **DISMISSED, with prejudice.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties

shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED**: May 3, 2022

Cheryl A. Eifert
United States Magistrate Judge