IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KEITH MARTIN MOLINEAUX,

                    Petitioner,

v.                                                      CIVIL ACTION NO.  2:21-cv-00190

DONNIE AMES,

                    Respondent.

MEMORANDUM OPINION AND ORDER

On March 29, 2021, the Petitioner, Keith Martin Molineaux, filed a pro se *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Document 1) wherein he asserted that he was being held in violation of the Constitution or laws of the United States because of an unlawful judgment and sentence in the Circuit Court of McDowell County. By *Standing Order* (Document 4), this action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.  After the Magistrate Judge ordered responsive pleading (Document 7), but before it was filed, the Petitioner obtained representation and filed *Petitioner's Motion for Leave to File Amended Petition for Writ of Habeas Corpus* (Document 17).  By *Order* entered on July 15, 2021 (Document 18), the Magistrate Judge granted the Petitioner's motion and set a briefing schedule for the Amended Petition.

On August 29, 2021, the Petitioner filed the *Amended Petition for Writ of Habeas Corpus.* (Document 21). On October 29, 2021, the Respondent filed a *Motion for Summary Judgment* (Document 26) and the *Respondent's Memorandum in Support of Motion for Summary Judgment*

(Document 27).  On November 23, 2021, the Petitioner filed the *Petitioner's Motion for Leave to File Second Amended Petition for Writ of Habeas Corpus or in the Alternative Incorporate by Reference* (Document 33).  By *Order* (Document 34) entered on November 29, 2021, the Magistrate Judge granted the Petitioner's motion and incorporated by reference his additional arguments to the Amended Petition.  On January 28, 2022, the Respondent filed a *Motion for Summary Judgment on Petitioner's Pro Se Grounds for Relief* (Document 35) and *Respondent's Memorandum in Support of Motion for Summary Judgment on Petitioner's Pro Se Grounds for Relief* (Document 36).

On February 9, 2022, the Petitioner filed a *Motion to Continue Pro Se* (Document 38) informing the Court that he had terminated his counsel and wanted to proceed pro se.  His attorney filed a *Motion to Withdraw as Counsel* (Document 41) on February 11, 2022.  The Petitioner also filed a *Motion to Extend Deadline to File Petitioner's Response to Respondent's Motion for Summary Judgment* (Document 42) on February 15, 2022.  By *Order* (Document 43) entered on February 16, 2022, the Magistrate Judge granted the Petitioner's request to proceed pro se, permitted his attorney to withdraw, and allowed the Petitioner 45 days to file a response.  The following day, the Petitioner filed a document titled *Motion to Dismiss Respondent's Summary Judgement Motion* (Document 44) and the *Petitioner's Reply Response to Respondents Memorandum* (Document 46).   On March 17, 2022, the Petitioner filed the *Petitioner's Motion for Summary Judgment on Respondent's Memorandums* (Document 48).  On April 2, 2022, the Respondent filed a *Motion to Strike Petitioner's Motion for Summary Judgment* (Document 50) asserting that the Petitioner's motion was redundant, immaterial, impertinent, and scandalous, and

2

on April 11, 2022, the *Petitioner's Reply to Respondents "Motion to Strike Petitioner's Motion for Summary Judgment"* (Document 51) was filed.

On May 3, 2022, Magistrate Judge Eifert filed her *Proposed Findings and Recommendations* (Document 56) ("PF&R"), denying the Respondents motion to strike, and recommending that this Court deny the Petition for Writ of Habeas Corpus, grant the Respondent's motions for summary judgment, deny the Petitioner's motion for summary judgment, and dismiss the action with prejudice. On May 11, 2022, the Petitioner filed a *Motion for an Extension of Time* (Document 57) requesting an additional 90 days to file his objections. By *Order* (Document 58) entered on May 11, 2022, this Court denied the motion to the extent he requested 90 days, but allowed the Petitioner an additional 30 days to file his objections. On July 17, 2022, the Petitioner timely filed *Petitioner's Objections to the Magistrate's Proposed Findings and Recommendations* (Document 62), together with a *Motion to Exceed the Page Limit* (Document 60) and a *Motion to Appoint Counsel* (Document 59) in which he also requested an evidentiary hearing.

For the reasons stated herein, the Court finds that the objections should be overruled, and the PF&R should be adopted. Further, the Court finds the motion to exceed the page limit should be granted, but given the nature of the Petitioner's claims and the applicable law governing this Court's analysis, neither the appointment of counsel nor an evidentiary hearing serves the interests of justice or is necessary to resolve the petition and amended petition pending before the Court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Magistrate Judge Eifert's PF&R thoroughly sets forth the procedural and factual history surrounding this matter. The Court incorporates by reference those facts and procedural history and provides the following summary for context. The Amended Petition arises from the

3

Petitioner's prosecution and conviction for the April 9, 2001 murders of John and Kimmie Stepp in Skygusty, West Virginia.  On October 23, 2001, the Petitioner was indicted by a grand jury in the Circuit Court of McDowell County ("circuit court") on seven felony counts including (1) first degree murder of John Stepp, (2) first degree murder of Kimmie Stepp, (3) robbery, (4) burglary, (5) conspiracy to commit murder, (6) conspiracy to commit robbery, and (7) conspiracy to commit burglary.  At trial, the State prosecuted the murder charges under theories of both premeditation and felony murder.  During the trial, a number of witnesses testified, and the Magistrate Judge thoroughly detailed the central points of the testimony relevant to the Petitioner's claims in the PF&R.  A summary of some of the witnesses' testimony is included here as it relates to the Petitioner's objections.

Michael Bevins, a neighbor, testified to hearing shots, seeing three men running from the victims' trailer and leaving in a vehicle.  He testified that the last person to leave was tall and lanky but was cross examined regarding his previous statement to police that the last person to leave was short and thin.  Trial testimony revealed that  Molineaux was the tallest of the men at the scene, and Brandon Britto, one of  Molineaux's three alleged co-conspirators, was the shortest.

Deputy Sheriff Tim Vineyard, of the McDowell County Sheriff's Department, described the scene of the crime and testified to John Stepp's history as a drug dealer.  Further testimony by Officer John Pauley of the West Virginia State Police included his recollection that the Stepps' home appeared to have been ransacked, and that alleged co-conspirator, Thomas King, had told him about the events of the night and had identified  Molineaux as the shooter.

James Day, a friend and coworker of John Stepp, testified to seeing the Stepps the night they were murdered and recalled James Reginald Jones, II, another alleged co-conspirator, coming

4

to Day's house where Jones made a phone call during which he asked to be picked up.  He testified that Jones was ultimately picked up by a white car.  Later, Molineaux's girlfriend testified that he had borrowed her white car the night of the murders and returned home with Jones and King around midnight.  Bonnie Day, James Day's wife, provided further testimony similar to that of her husband, including Jones' telephone conversation and also recalled that she saw Jones picked up by a white car.  She added that she had seen him picked up in the same car previously and that it was driven by Thomas King.  On cross-examination, she admitted that her previous statement to police did not reference the phone call.  Additional witnesses recalled seeing Jones and King in a white car the day before the murders.  One of the witnesses, Dennis Johnson, testified that Molineaux had told him the white car was his.

The State also called Thomas King, who was charged with the same crimes as  Molineaux. He testified that he, Molineaux, Jones, and Britto went to buy marijuana from John Stepp on the day of the shooting.  After they rejected the offered marijuana, King testified that Molineaux demanded money for better marijuana and then pointed a gun at John Stepp.  He testified that he, Jones and Britto searched for money while  Molineaux held the Stepps at gunpoint near the back of the trailer.  He heard two gunshots, along with screaming, and then the four men ran to the car and left.  King testified that Britto asked Molineaux why he shot the Stepps, and that  Molineaux explained that Stepp would not tell them where the money was.  He further testified that Molineaux added that the gun had jammed after shooting Kimmie Stepp and he had decided not to shoot the child.  King testified that he turned himself in to the police on the following day and explained what had happened.  On cross-examination, he insisted that it was Molineaux and not Britto who was the shooter.

Officer Michael Crowder of the West Virginia State Police testified to having arrested and mirandized Molineaux, and that Molineaux had confessed to the murder. On cross-examination, he admitted that Molineaux provided no recorded or written statement memorializing the alleged confession. Additional testimony revealed that a handgun, drugs, money, and ammunition were found in Brandon Britto's apartment. Testimony at trial confirmed that no drugs, money, or firearms were ever found on Molineaux or at his residence.

Finally, Molineaux was thoroughly advised of his right to testify or remain silent and was given time to discuss the options with his attorneys. The following day, he was again advised of his rights, and confirmed that he had spent time discussing his rights and considering his options. He decided not to testify, and the circuit court found it was a knowing, voluntary decision. In closing arguments, the state proceeded on both theories of murder. Molineaux's defense counsel presented the alternative theory that Britto was, in fact, the shooter. The State argued to the jury that this distinction was not material to their verdict.

The jury convicted the Petitioner on all charges except conspiracy to commit murder. He was sentenced to two consecutive sentences of life without mercy for the two counts of murder and received no sentence for the remaining convictions to avoid double jeopardy concerns related to the underlying felonies. In reviewing the jury charge, both parties consented to both a premeditation instruction, and a felony murder instruction for both first degree murder charges. Additionally, in the State's closing argument, the prosecutor told the jury they would signal their adoption of the felony murder theory by convicting the Petitioner of the underlying offenses. In administering the sentence, the circuit court specifically noted that the Petitioner's robbery and burglary convictions evidenced the jury's verdict of guilt on the felony murders (as opposed to

6

premeditated murder).  No objection was ever raised to these findings or conclusions made by the circuit court, and none have been raised in any subsequent appellate or habeas proceeding including the instant matter.

The Petitioner appealed his convictions to the Supreme Court of Appeals of West Virginia ("SCAWV") raising five assignments of error. On January 27, 2004 the SCAWV refused his appeal.  He then filed a petition for writ of certiorari to the Supreme Court of the United States which was denied.  His first state habeas petition was dismissed by the circuit court but ultimately remanded for appointment of counsel and an evidentiary hearing in 2006.  More than 10 years later, after having counsel appointed multiple times, he filed an amended habeas petition, together with a supplement. The circuit court held an evidentiary hearing on that amended petition and supplement in 2018.  In a 31-page order, the court denied and dismissed his petition.  On appeal, the SCAWV adopted the circuit court's opinion.

He then filed the instant federal habeas petition, wherein he raised nineteen (19) grounds for relief, including claims regarding ineffective assistance of both trial and appellate counsel, the alleged biased, racist and prejudicial statements of the circuit court judge and prosecutor, alleged errors by the circuit court in jury instructions, alleged failures to dismiss charges, and accusations of tampering with case numbers and transcripts.  He submitted an amended petition through counsel incorporating his original petition and adding additional claims of ineffective assistance of counsel.

After the Magistrate Judge filed her PF&R, recommending denial of the petition, the Petitioner filed a lengthy objection, raising multiple complaints about the PF&R.  He asks this

Court to grant his petition for relief finding that his incarceration, based upon his state court judgment, violates the Constitution of the United States and clearly established Federal law.

## STANDARD OF REVIEW

### A.  Objections to PF&R

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  Additionally, documents filed pro se are held to a less stringent standard than if they were prepared by a lawyer and must be liberally construed. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  However, liberal construction does not allow a Court to ignore clear failures to set forth a claim cognizable in federal court. *Weller v. Department of Social Servs.*, 901 F.2d 387, 390-91 (4th Cir.1990).

### B.  Motions Pursuant to 28 U.S.C. § 2254

28 U.S.C. § 2254 provides for federal review of a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Petitioners must exhaust all available state remedies. *Id.* § 2254(b)(1).  Furthermore:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be

8

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2).   Factual determinations made by a state court are presumed correct, and petitioners must rebut that presumption by clear and convincing evidence. *Id.* § 2254(e)(1).

Federal review of motions brought by prisoners in state custody under 28 U.S.C. § 2254 is highly deferential.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Robinson v. Polk*, 438 F.3d 350, 354-55 (4th Cir. 2006).  The Supreme Court explains that the "contrary to" clause of § 2254(d)(1) means that "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  The "unreasonable application" clause of that section means that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"A state court's decision is unreasonable where it is 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.'" *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  If a state court applied the appropriate legal standard in a reasonable manner, the federal court may not grant habeas relief even if it would have reached a different conclusion. *Williams*, 529 U.S. at 406.  "[A]n *unreasonable* application

of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original).

**MOTION TO APPOINT COUNSEL**

Prior to addressing the Petitioner's objections to the PF&R, the Court first reviews his *Motion to Appoint Counsel* (Document 59). Therein, he requested the appointment of counsel to assist with his objections, and an evidentiary hearing on his petition. Previously, the Petitioner had obtained counsel and terminated his representation during the briefing of this matter. He subsequently filed a motion to proceed pro se, which the Magistrate Judge granted. Months later, after the filing of the PF&R, over a month after the Court granted the Petitioner's motion for an extension of time to file objections and just two days before the extended objection deadline, the Petitioner filed his motion for appointment of counsel. The motion was filed on the same day that the Petitioner filed his detailed objections to the PF&R.

Appointment of counsel in a § 2254 proceeding is governed by 18 U.S.C. § 3006A(a)(2), which grants the Court discretionary power to appoint counsel for financially eligible individuals if the Court finds "that the interests of justice so require." 18 U.S.C. § 3006A(a)(2). A thorough review of the procedural history, the record and the Petitioner's previous filings reveal that the Petitioner is clearly capable of compiling articulate, specific, and reasoned objections and legal arguments. Further, given the applicable law that guides this Court's analysis of a state prisoner's habeas petition, the Court finds that appointment of counsel and/or an evidentiary hearing are not required by the interests of justice. The Petitioner's *Motion to Appoint Counsel* (Document 59) is, therefore, denied.

## OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

The Petitioner objects broadly to many of the conclusions in the PF&R, disputing both factual and legal findings. For clarity, the Court organizes his objections into three broad categories, including objections to the findings related to (1) prosecutorial misconduct, (2) ineffective assistance of counsel, and (3) the dispositive nature of the Petitioner's admissions.[1] After thorough review and considering the highly deferential standard required for this Court's review of §2254 petitions, the Court finds that each objection must be overruled.

### A.  Objections to Findings Related to Prosecutorial Misconduct

As the Magistrate Judge properly articulated, in examining a claim of prosecutorial misconduct, courts must first ask whether specific guarantees of the bill of rights are involved, thereby warranting "special care" to assure the conduct does not "impermissibly infringe" upon those rights. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974).  However, when these specific guarantees are not at issue, the court instead asks whether the alleged improper remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly,* 416 U.S. at 643).  "[A] court making [this] due process inquiry must consider the challenged conduct in relation to the proceeding as a whole." *Humphries v. Ozmint*, 397 F.3d 206, 218 (4th Cir. 2005).

---

[1] As the Magistrate Judge noted, several of the claims likely are unexhausted as they were not appealed to the Supreme Court of Appeals of West Virginia. Typically, courts do not review federal habeas claims absent "total exhaustion" of the issue in the state courts. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Presented with a mixed petition with both exhausted and unexhausted claims, the Magistrate Judge correctly identified the different options available to the Court to address the petition. However, despite the procedural grounds to support dismissal, the Court may still address unexhausted claims on the merits "notwithstanding the failure to exhaust the remedies available in the courts of the State." 28 U.S.C. §2254(b)(2). Accordingly, in the interest of resolving the Petitioner's claims, the Court chooses to address the petition as a whole, rather than simply dismiss the petition due to the improper inclusion of unexhausted claims.

Here, the Petitioner objects centrally to two findings of the Magistrate Judge rejecting his claims regarding the prosecutor's alleged knowing use of false testimony and withholding of exculpatory evidence.

    i.      *Withholding Exculpatory Evidence*

The Petitioner objects broadly to the Magistrate Judge's conclusions regarding his claim that the prosecutor withheld exculpatory evidence. Despite not identifying how the cited evidence would be exculpatory, he argues that the failure to turn over this evidence unconstitutionally prejudiced him. However, as the Magistrate Judge correctly stated, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Alleged withheld evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Horner v. Nines*, 995 F.3d 185, 206 (4th Cir. 2021). The state courts rejected his arguments, finding, among other things, that the evidence was not material toward guilt or punishment.

In examining the claim, the lack of materiality is primarily evidenced by the Petitioner's own arguments. He contends repeatedly and forcefully that the evidence upon which his complaint was made, specifically the prosecutor knowingly allowing Officer Crowder to give false testimony regarding the Petitioner's confession, items of forensic evidence, which tested negative, as well as the victims' daughter's description of the shooter, would have proven that Mr. Britto was the individual who actually fired the gun. Before even reaching the merits of whether that contention

12

is true, the Court finds that it would not be material.  Given that the Petitioner was convicted of felony murder, evidence showing that someone else fired the weapon would have no material bearing on the facts the state needed to prove to secure the conviction.  As he has not identified how this evidence would have altered the jury's conclusions that he was present and guilty of felony murder, it fails to rise to the level of materiality to entitle him to relief.  Accordingly, the Court finds that the state court's rejection of his claims, based on the immateriality of the cited evidence, does not involve unreasonable conclusions of law contrary to federal law or unreasonable determinations of fact.  Thus, the objection should be overruled.

       ii.      *False Testimony*

The Petitioner objects to the Magistrate Judge's findings related to the prosecutor allegedly suborning false testimony from Officer Crowder related to the Petitioner's alleged confession to the killing.  He argues that the Magistrate Judge improperly disregarded facts that illustrate that the  prosecutor knew of the false testimony and brought it to the jury anyway.

As the Magistrate Judge properly found, a prosecutor's knowing use of false testimony violates due process rights. *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Agurs*, 427 U.S. 97, 103 (1976).  In the state proceedings, the state courts denied the Petitioner's claim on this issue based on the state test announced in *State ex. rel. Franklin v. McBride*, 226 W.Va. 375 (2009).  This test, requiring demonstration that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known it was false, and (3) the testimony had a material impact on the verdict, is essentially the same as the Fourth Circuit's test. *Compare Franklin*, 226 W.Va. at 379-80 *with United States v. Basham,* 789 F.3d 358, 376 (4th Cir. 2015) (outlining the federal three-part test).  Thus, reliance on the state standard is consistent with federal law.

Despite the Petitioner's contentions that the testimony relating to his alleged confession was false, this Court, like the Magistrate Judge, will not circumvent the considered determinations of facts by the state courts who heard and/or reviewed the evidence. The state court held an evidentiary hearing on this precise issue, considered the full record, and made a factual determination that the Petitioner had failed to meet the burden required to prove that the testimony was unquestionably false, or that the prosecutor knew or had reason to know it was false. The Supreme Court of Appeals of West Virginia upheld this conclusion. Nothing presented in the objections, or the underlying petition, constitute "clear and convincing" evidence of an error, as required under 28 U.S.C. §2254(e)(1), and the Court cannot find anything in the record to establish that it was an *unreasonable* determination of facts or law that led to the decision.  Accordingly, this objection should be overruled.

### B.  Objections to Findings Related to Ineffective Assistance of Counsel Claims

The Petitioner objects generally to the Magistrate Judge's findings regarding his claims of ineffective assistance of counsel and largely reiterates many of the same grounds raised in his petition.  As the Magistrate Judge detailed, criminal defendants claiming ineffective assistance of counsel must demonstrate that (a) "counsel's representation fell below an objective standard of reasonableness," and (b) the defense was actually prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984).  Courts must apply a "strong presumption" that an attorney's representation "falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Furthermore, ineffective assistance of counsel claims are subject to the strictures of review under § 2254(d). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied *Strickland* incorrectly.

Rather, [the petitioner] must show that [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (internal citation omitted).

Upon review, many of the objections appear related to the continued insistence that the Petitioner is not the shooter. However, as detailed extensively within the Magistrate Judge's PF&R, this distinction is not material as it does not impact the ultimate reliability of the conviction. Further, the objections do not establish that the state court's conclusions were based upon an unreasonable determination of the facts, nor an unreasonable application of law. Thus, they should be overruled.

### i. *Robbery Instruction*

Having asserted that his counsel was ineffective for not objecting to the circuit court's robbery instruction, the Petitioner raises an objection to the Magistrate Judge's finding that despite any potential shortcomings in the given jury instruction, because the Petitioner was convicted of an additional qualifying felony to establish a foundation for felony murder, any errors do not materially impact the verdict. He reiterates his argument, that because the robbery instruction failed to explicitly define robbery, and instead merely described the course of conduct which would make a robbery a robbery in the first degree, it impermissibly excused the Government of proving the requisite elements beyond a reasonable doubt. However, as the Magistrate Judge correctly found, the Petitioner was convicted of two separate qualifying offenses serving as predicate felonies under the felony murder rule—robbery and burglary. *See* W. Va. Code § 61-2-1. Thus, even accepting the Petitioner's argument would not alter the soundness of the ultimate conviction upon which he was sentenced.

15

The Petitioner's further objection that this allegedly flawed instruction also undermines the burglary instruction is also unavailing. As he argues, the burglary instruction includes the requirement that the jury find he entered the dwelling with the intent to commit a crime therein. He argues that because the robbery instruction was flawed, and that robbery was the only supposed crime he entered the dwelling with the intent to commit, the jury could not have properly found him guilty of burglary. Despite this, neither the burglary statute nor the circuit court's instruction required the jury to find a specific crime the Petitioner intended to commit. There was evidence before the jury that the Petitioner and his co-conspirators went to the Stepp's home to purchase drugs and there was evidence that three of them ransacked the home looking for money. Accordingly, the prejudice prong of *Strickland* cannot be met, and the state court's decisions on that point were not an unreasonable application of law or unreasonable determination of facts.

*ii.    Additional Objections*

The Petitioner makes additional objections related to the Magistrate Judge's findings relative to ineffective assistance of counsel, including findings related to his counsel's: (1) failure to rebut Officer Crowder's testimony, (2) failure to object to certain statements, (3) failure to call certain witnesses, (4) failure to investigate physical evidence, and (6) failure to present mitigating evidence. Throughout his objections, he raises many of the same arguments presented in his petition and argues that each of the Magistrate Judge's findings were unreasonable and erroneous. To the extent any of these issues go beyond mere disagreements with his counsel's trial strategy, each fails for the same central reason, namely, the failure to establish prejudice as required by *Strickland*. Accordingly, for the reasons accurately detailed by the Magistrate Judge, they should be overruled.

Initially, while the Petitioner substantially complains of his counsel's purported failure to adequately rebut Officer Crowder's testimony, as discussed above, the Petitioner cannot show the requisite prejudice, as Officer Crowder's testimony was not required for the resulting felony murder conviction.  As the state courts concluded, and as discussed above, the identity of the shooter is ultimately irrelevant to the question of guilt given the nature of the conviction and sentencing.  Because of the state's felony murder rule, the state did not need to prove that the Petitioner was the individual who pulled the trigger to achieve a conviction.  Thus, the state court's determination, as to this issue, that his attorney's handling of Officer Crowder's testimony was not constitutionally deficient, was reasonable.

The Petitioner also objects to the denial of his claim that counsel was ineffective for failing to object to a number of statements.  However, upon review, the state court's denial of his claim on this matter presents no finding or conclusion contrary to federal law nor does it utilize any unreasonable factual findings. His objections primarily point to alleged unmirandized incriminating statements, and statements he believes impermissibly rely on hearsay.  Neither of these complaints warrant relief.  Initially, upon substantial review of the record, the state courts determined that there was no credible evidence to support the contention that his *Miranda* rights were violated.  Additionally, the Supreme Court of Appeals of West Virginia found that the issue was specifically addressed and argued by counsel at the suppression hearing, thus undermining ineffective assistance of counsel claims.  Further, as discussed at length, the remaining claims, regarding counsel's failure to object, relate to testimony which pointed to the Petitioner as the shooter.  As the state courts conclusively held that the identity of the killer was not material under the circumstances, and this conclusion was reasonable, the Petitioner fails to establish the resulting

17

prejudice from his counsel's conduct. Nothing presented by the Petitioner or included within the record illustrates that these conclusions represent unreasonable determinations of law and/or fact. Thus, the objection should be overruled.

Additionally, while the Petitioner argues that there are a number of witnesses his counsel should have called, he fails to establish the state courts' denial of his petition on this basis was unreasonable or contrary to federal law. The cited witnesses would allegedly have supported the Petitioner's argument that he was not the individual who fired the weapon. As this is not material to the determinations of guilt and thus not exculpatory, the decision to call these witnesses would constitute "virtually unchallengeable" trial strategy within the discretion of the attorney. *Strickland*, 446 U.S. at 690. Accordingly, the Court finds that this objection should be overruled.

Further, despite the Petitioner's complaints and objections regarding his attorney's investigation of physical evidence, the state court determination that this evidence would not have revealed anything that would have altered the result or cast doubt on the verdict was reasonable and consistent with federal law. At the state court habeas proceeding, the Petitioner admitted to being present at the home and witnessing the murders, and he failed to articulate how the cited evidence, if more thoroughly investigated, would have undermined this fact. With the required substantial deference to counsel's judgment, as required by *Strickland*, coupled with the substantial deference given to state court determinations, the objection fails to set forth a proper basis for relief. Even if counsel had done or failed to do everything the Petitioner articulates, it would not alter the ultimate determination of guilt under the circumstances. Thus, nothing in the state court decisions runs afoul of federal law or represents unreasonable determinations of fact or law.

Finally, his objections related to the alleged failure to present mitigating evidence fail to articulate anything unreasonable or contrary to federal law within the state court decisions. As with much of his argument, the evidence identified would primarily seek to rebut the accusation that he was the shooter. As detailed at length, the identity of the shooter is immaterial in a felony murder conviction under these circumstances. Thus, the objection should be overruled.

> C. *Objection to General Finding that Petitioner's Admissions That the Petitioner was Present at the Crime Scene and Witnessed the Murders are Dispositive*

The Petitioner generally contests the finding that his admission to being present at the scene is dispositive of his claims, given the nature of his felony murder convictions. He argues, among other things, that this admission was not made until 2018, and not presented to the jury. He, however, overlooks the depth of circumstantial evidence within the record, and repeatedly noted by previous courts, that established the basis for his conviction under the felony murder rule. As detailed by the Magistrate Judge and the state courts beforehand, proving that the Petitioner was the individual who fired the weapon was unnecessary to establish culpability for murder. Thus, the substantial and uncontradicted trial evidence that the Petitioner was present at the home, coupled with his later admission to the state court that he was present and witnessed the murder, provides a reasonable basis for the state court's denial of his claims. Thus, because the determinations were not contrary to law or unreasonable, the objection should be overruled.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Petitioner's Objections to the Magistrates Proposed Findings and Recommendations* (Document 62) be **OVERRULED** and that Magistrate Judge Eifert's *Proposed Findings and Recommendation* (Document 56) be **ADOPTED**. The Court **ORDERS** that the Petitioner's

*Motion to Appoint Counsel* (Document 59) be **DENIED** and that the Petitioner's *Motion to Exceed the Page Limit* (Document 60) be **GRANTED**.  Further, the Court **ORDERS** that the Petitioner's *Petition Under 28 U.S.C § 2254 for Writ of Habeas Corpus by a Person in State Custody* (Document 1) and *Amended Petition for Writ of Habeas Corpus* (Document 21) be **DENIED**, that the Respondent's *Motion for Summary Judgment* (Document 26) and *Motion for Summary Judgment on Petitioner's Pro Se Grounds for Relief* (Document 35) be **GRANTED,** and that this matter be removed from the docket.

The Court has additionally considered whether to grant a certificate of appealability.  *See* 28 U.S.C. 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* at 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  The Court concludes that the governing standard is not satisfied in this instance.  Accordingly, the Court **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Eifert, to counsel of record, and to any unrepresented party.

ENTER:    September 1, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

20